**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LOUISE ROSMER, on behalf of herself
and as class representative,
            *Plaintiff-Appellant,*

v.                                              No. 00-2224

PFIZER INCORPORATED,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Solomon Blatt, Jr., Senior District Judge.
(CA-00-2168-9-8)

Argued: March 2, 2001

Decided: August 23, 2001

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge,
and Cynthia Holcomb HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

---

Affirmed by published opinion. Chief Judge Wilkinson wrote the
majority opinion, in which Senior Judge Hall joined. Judge Motz
wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Robert Norris Hill, SPEIGHTS & RUNYAN, Hampton,
South Carolina, for Appellant. David Klingsberg, KAYE, SCHOLER,

FIERMAN, HAYS & HANDLER, L.L.P., New York, New York, for Appellee. **ON BRIEF:** Daniel A. Speights, Amanda G. Steinmeyer, SPEIGHTS & RUNYAN, Hampton, South Carolina; Howard Hammer, HAMMER, HAMMER, CARRIGG & POTTERFIELD, Columbia, South Carolina, for Appellant. Robert Grass, KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, L.L.P., New York, New York; Michael T. Cole, Jane Thompson Davis, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Charleston, South Carolina, for Appellee.

---

**OPINION**

WILKINSON, Chief Judge:

This case turns on one discrete question of statutory interpretation — whether 28 U.S.C. § 1367 (1994) permits federal courts to exercise supplemental jurisdiction in a diversity class action when one named plaintiff has a claim above the jurisdictional minimum. The district court held that § 1367 confers federal subject matter jurisdiction over class members whose claims do not satisfy the amount in controversy requirement of 28 U.S.C. § 1332, as long as diversity jurisdiction exists over the claims of a named plaintiff. Because the plain text of § 1367 authorizes supplemental jurisdiction in diversity class actions, we affirm the judgment of the district court.

I.

Louise Rosmer filed an action in state court against Pfizer Inc. on behalf of herself and as class representative for "all persons whose spouses have been injured by the drug Trovan." She alleged a loss of consortium arising from injuries to her husband caused by Trovan, an antibiotic manufactured by Pfizer. She sought to recover general and special damages resulting from the loss of consortium as well as punitive damages.

Only state-law claims were pled. Rosmer is a resident of South Carolina. Pfizer is a Delaware corporation with its principal place of business in New York. The parties agree that Rosmer's individual

claim exceeded $75,000. The complaint alleged, however, that some class members suffered less than $75,000 in actual and punitive damages.

Pfizer removed this action from state court to the United States District Court for the District of South Carolina, basing federal subject matter jurisdiction on 28 U.S.C. §§ 1332 and 1367. Pfizer maintained that the district court had original jurisdiction under § 1332 over Rosmer's claims because she and Pfizer were of diverse citizenship, and Rosmer's claims exceeded $75,000. *See* 28 U.S.C.A. § 1332 (West Supp. 1999).[1] Pfizer then contended that where the district court had original jurisdiction over the named plaintiff, it had supplemental jurisdiction under 28 U.S.C. § 1367 over the claims of all class members regardless of whether each of their claims independently satisfied § 1332's amount in controversy requirement.

Rosmer moved to remand the action to state court alleging a lack of federal subject matter jurisdiction. The district court held that subject matter jurisdiction was appropriate in this case and denied Rosmer's motion to remand. At the same time, the court certified its order for interlocutory review under 28 U.S.C. § 1292(b). This court granted Rosmer's petition for interlocutory review, and Rosmer now appeals.

## II.

In 1973, the Supreme Court held that in a class action, multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional amount for diversity suits in federal courts. *See Zahn v. Int'l Paper Co.*, 414 U.S. 291, 300-01 (1973). The Court concluded that "any plaintiff without the jurisdictional amount must be dismissed from the case, even though others allege jurisdictionally sufficient claims." *Id.* at 300.

---

[1]Section 1332 reads in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between —

(1) citizens of different States . . . .

The rule that all plaintiffs in a class action must independently satisfy the amount in controversy requirement went unchallenged until 1990, when Congress created supplemental jurisdiction with the passage of 28 U.S.C. § 1367.[2]

The supplemental jurisdiction statute was passed in response to the Supreme Court's decision in *Finley v. United States*, 490 U.S. 545 (1989). In *Finley*, the plaintiff brought a Federal Tort Claims Act

---

[2]Section 1367 reads in pertinent part:

§ 1367.   Supplemental Jurisdiction.

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if —

1) the claim raises a novel or complex issue of State law,

2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

3) the district court has dismissed all claims over which it has original jurisdiction, or

4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

action against the United States, alleging negligence on the part of the Federal Aviation Administration. The plaintiff then moved to amend her federal complaint to include state law claims against non-diverse parties. No independent basis for federal jurisdiction existed over the state law claim against the new defendants. *See Finley*, 490 U.S. at 546. The Court held that the state law claim did not belong in federal court. *Id.* at 554-55. The Court also invited Congress to act, noting that "[w]hatever we say regarding the scope of jurisdiction conferred by a particular statute can of course be changed by Congress." *Finley*, 490 U.S. at 556.

The new § 1367 states that federal courts have supplemental jurisdiction over cases "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Thus, Congress overruled the holding in *Finley* that pendent parties do not belong in federal court.

Congress did not authorize supplemental jurisdiction in all cases, however. Section 1367(b) states that when "original jurisdiction [is] founded solely on section 1332," federal courts shall not have supplemental jurisdiction over "claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b). The interpretation of § 1367(a) & (b) lies at the heart of this case.

### III.

We must decide whether § 1367 authorizes supplemental jurisdiction in the diversity class action context, or whether *Zahn* survives the enactment of § 1367. Other circuit courts have split on this question. *Compare Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 930-31 (7th Cir. 1996) (stating that supplemental jurisdiction applies to class actions), *and In re Abbott Labs.*, 51 F.3d 524, 528-29 (5th Cir. 1995), *aff'd by an equally divided court sub nom. Free v. Abbott Labs.*, 529 U.S. 333 (2000) (per curiam) (same), *with Trimble v. Asarco, Inc.*, 232 F.3d 946, 962 (8th Cir. 2000) (holding that each

member of a class who does not meet the jurisdictional amount must be dismissed from the case), *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 218 (3d Cir. 1999) (same), *and Leonhardt v. Western Sugar Co.*, 160 F.3d 631, 640 (10th Cir. 1998) (same). The Supreme Court has recently divided 4-4 on this issue. *See Free v. Abbott Labs.*, 529 U.S. 333 (2000) (per curiam). Our view, respectfully, is that § 1367 confers supplemental jurisdiction in diversity class actions, so long as one named plaintiff has a claim giving a federal court original jurisdiction.

A.

Section 1367(a) is a general grant of supplemental jurisdiction, stating that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367(a) "is broadly phrased to provide for supplemental jurisdiction over claims appended to 'any civil action' over which the court has 'original jurisdiction.'" *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (quoting 28 U.S.C. § 1367(a)).

Section 1367(a) states in straightforward language that a federal court may exercise supplemental jurisdiction if those claims "form part of the same case or controversy" as the claim over which "the district courts have original jurisdiction." 28 U.S.C. § 1367(a). This case unequivocally fits within the above language. The federal district court has "original jurisdiction" under § 1332 because Rosmer and Pfizer are diverse and her claim is above $75,000. 28 U.S.C.A. § 1332(a); *accord* 28 U.S.C. § 1367. And since the pendent claims of the absent class members raise similar questions of law and fact to Rosmer's claim, they are necessarily a "part of the same case or controversy." 28 U.S.C. § 1367(a); *see also* Fed. R. Civ. P. 23. Therefore, the district court has supplemental jurisdiction over the other claims.

The only exceptions to the federal court's supplemental jurisdiction authority are those "provided in subsections (b) and (c)" or those "expressly provided otherwise by Federal statute." 28 U.S.C. § 1367(a). Section 1367(c), relating to discretionary jurisdiction, is inapplicable

to this case. And no federal statute speaks "expressly" as to whether class actions are subject to supplemental jurisdiction. Accordingly, the district court may exercise supplemental jurisdiction unless prevented by one of § 1367(b)'s exceptions.

Section 1367(b) "imposes specific limits on the use of supplemental jurisdiction in diversity cases." *Shanaghan*, 58 F.3d at 109. Section 1367(b) creates exceptions for "claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules." 28 U.S.C. § 1367(a). For example, in diversity actions the rule of complete diversity would still be required in the context of Rule 24 intervention or Rule 19 joinder of necessary parties. However, nowhere in § 1367(b) does it exempt from the normal rules of supplemental jurisdiction persons made parties under Rule 23. In effect, Rosmer would have us rewrite the statute to insert Rule 23 into § 1367(b)'s list of exceptions. This we cannot do.

Rosmer nevertheless argues that the text of § 1367 and *Zahn* can be harmonized. She relies on *Leonhardt v. Western Sugar* for the proposition that § 1367 "can be read literally, and unambiguously, to require each plaintiff in a class action diversity case to satisfy the *Zahn* definition of 'matter in controversy' and to individually meet the $75,000 requirement." *Leonhardt*, 160 F.3d at 640; *see also Trimble*, 232 F.3d at 962 (quoting *Leonhardt* approvingly); *Meritcare*, 166 F.3d at 221-22 (same).

We disagree with the *Leonhardt* court on this issue. *Leonhardt* relied on two main points to support its holding. First, it stated that the term "original jurisdiction" in § 1367(a) incorporated the well-understood definition of "matter in controversy." Thus, the statute "expressly excepted claims brought under § 1332." *Leonhardt*, 160 F.3d at 640. Second, *Leonhardt* based its holding in part on the fact that "original jurisdiction" meant original jurisdiction over the whole action at the initiation of a complaint. The plain text of § 1367, however, cuts against both of the arguments in *Leonhardt*.

First, the text of § 1367 makes clear that "original jurisdiction" in § 1367(a) includes diversity cases. If it were otherwise, as *Leonhardt*

held, there would be absolutely no need for § 1367(b) at all since § 1367(b) only applies to cases brought under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title . . . ."). Congress would not have had to exempt some diversity cases in subsection (b) if subsection (a) did not cover diversity claims in the first instance.

Indeed, the *Leonhardt* analysis falters because "original jurisdiction" would mean something different in § 1367(a) than it does in §§ 1332 and 1367(b). It is a "basic canon of statutory construction that identical terms within an Act bear the same meaning." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992). However, interpreting § 1367(a)'s use of "original jurisdiction" to cover only federal question claims cannot be reconciled with § 1332's grant of "original jurisdiction" over diversity claims. Such a reading of the statute adds an exception that the language and the structure of the Act cannot bear. The text does not impose such a hidden barrier for diversity claims.

Second, Rosmer and *Leonhardt* maintain that "original jurisdiction" over a "civil action" means that the district court must have original jurisdiction over the *entire* action at the initiation of the complaint. Yet this reading of the statute would render the phrase "over all other claims that are so related to claims in the action within such original jurisdiction" virtually superfluous. 28 U.S.C. § 1367(a). The language itself contemplates that a "civil action" refers to *one* claim in which original jurisdiction is proper. *Id.* The other claims that are "so related to claims in the action within such original jurisdiction" are properly in federal court due to § 1367's grant of supplemental jurisdiction. *Id.*

The phrase "other claims" cannot refer only to claims added after the action has already been filed. The *Leonhardt* court read the "other claims" language narrowly because § 1367(b) speaks to the addition of parties in "an on-going diversity action." *Leonhardt*, 160 F.3d at 639. Thus, § 1367(b)'s listing of Rule 14 (addressing third-party impleaders), Rule 19 (addressing necessary joinder of parties), and Rule 24 (addressing intervention) shows that supplemental jurisdic-

tion would apply only to parties *added* to an ongoing action. *See Leonhardt*, 160 F.3d at 639-40.

The *Leonhardt* court's analysis on this point, however, does not persuade us. Section 1367(b) does not merely speak to the addition of parties. It also contains an exception for Rule 20, which authorizes permissive joinder of parties. And permissive joinder can certainly be utilized at the beginning of the action, not just for an ongoing diversity action. *See, e.g.*, *Carden v. Arkoma Assocs.*, 494 U.S. 185, 186 (1990) (plaintiff initially sues two different defendants of diverse citizenship); *United States v. Mississippi*, 380 U.S. 128, 130, 142-43 (1965) (joinder of six defendants at beginning of the complaint valid under Rule 20); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 151 (4th Cir. 1995) (plaintiff's initial complaint joins two different defendants under Rule 20). Thus, if *Leonhardt* were correct, there would be no need to except Rule 20 from the grant of supplemental jurisdiction in § 1367(a).

Furthermore, if supplemental jurisdiction is premised on initially obtaining original jurisdiction over the whole action, the statute would not even apply to cases such as *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and *Finley*. *Gibbs* involved an initial complaint containing a federal claim and a pendent state law claim without an independent basis for jurisdiction. *Gibbs* allowed federal courts to hear a state law claim that stemmed from the same common nucleus of operative facts as a federal law claim. *See Gibbs*, 383 U.S. at 725. Section 1367 codified this holding. A federal court does not have subject matter jurisdiction over a pendent claim by virtue of original jurisdiction. The statute recognizes that the pendent claims like those in *Gibbs* are part of the "all other claims," not part of the "original jurisdiction" over the "civil action." 28 U.S.C. § 1367(a). It does not matter whether the "original jurisdiction" stems from a federal question or diversity. More damaging to the *Leonhardt* court is the fact that under its analysis, § 1367 would not apply to cases such as *Finley*, the very case that prompted the enactment of the statute in the first instance. If *Leonhardt* were correct, there would have been no original jurisdiction in *Finley* because the plaintiff did not have an

independent jurisdictional basis for suing the non-diverse party in federal court.[3]

Rosmer urges us to read distinction after distinction into the term "original jurisdiction." But we refuse to squint at § 1367(a) so hard that we lose sight of the statute's plain meaning. We do not need to read in an exception to original jurisdiction for diversity jurisdiction where none exists. Indeed, in *Shanaghan* we already held that § 1367 "clearly provides for the operation of supplemental jurisdiction in diversity cases." *Shanaghan*, 58 F.3d at 109. Section 1367 is a broad grant of authority for supplemental jurisdiction, subject only to the express limitations in the Act; it does not contain unspoken limits on the statutory text. *See id.* at 109. Thus, § 1367 plainly does not require that *all* class members must independently meet the amount in controversy requirement of § 1332.

### B.

Rosmer argues, however, that § 1367's legislative history makes clear that Congress wanted absent class members to independently satisfy the amount in controversy requirement. Rosmer points to the House Committee Report accompanying § 1367 stating that the statute "is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to" *Finley*. H.R. Rep. No. 101-734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875. The report subsequently cites *Zahn* as an example of a case not disturbed by the new supplemental jurisdiction statute. *Id.* at n.17.

The Supreme Court, however, has consistently stated that when a statute is plain on its face, a court's inquiry is at an end. "The legislative intent of Congress is to be derived from the language and structure of the statute itself, if possible, not from the assertions of codifiers directly at odds with clear statutory language." *United States v. Lanier*, 520 U.S. 259, 268 n.6 (1997). It is "the statute, and not the

---

[3]Although the plaintiff in *Finley* amended her complaint to add the non-diverse party, the holding was in no way based on the formalistic distinction between whether the plaintiff *originally* filed the complaint against both parties or amended the complaint to do so.

Committee Report, which is the authoritative expression of the law." *City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 337 (1994). A buried reference in a Committee report does not supersede the plain statutory structure and text.[4] And the statutory text makes plain that where the court possesses original jurisdiction under § 1367(a), other closely related claims are within its supplemental jurisdiction, unless explicitly excluded by § 1367(b).

## C.

Rosmer maintains, however, that since the statutory text is ambiguous, we may resort to the use of legislative history. She argues that since three other circuits and four Justices of the Supreme Court (by voting to reverse in *Abbott*) would hold that § 1367 requires absent class members to independently satisfy the jurisdictional amount, the statute must be ambiguous.

We respect the views of those who take a different view of § 1367. At the same time, we cannot allow the fact that other circuits have called a statute ambiguous to negate this circuit's duty to interpret the text of the enactment. To hold otherwise would mean that we would automatically call a statute ambiguous because a sister circuit has interpreted a statute in a contrary manner. In effect, we would be

---

[4]Moreover, even if we were inclined to write in an exception for Rule 23, such an exception might be equally as violative of Congress' "intent." In the same footnote where the House Committee Report approvingly cited *Zahn*, it also cited *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356 (1921). *See* 1990 U.S.C.C.A.N. at 6875 n.17. In *Ben-Hur*, the Supreme Court held that in class actions, only the named plaintiffs must have complete diversity. In other words, absent class members may come from the same state as the opposing party so long as all named plaintiffs are diverse. Adding Rule 23 to § 1367(b)'s exceptions would have the effect of reversing the result in *Ben-Hur* even as it sustains the result in *Zahn*. Indeed, the House Report's admonition that both *Zahn* and *Ben-Hur* survive the enactment of § 1367 is simply impossible to square with the plain text of the statute. *See also* 16 James Wm. Moore et al., *Moore's Federal Practice* ¶ 106.44 at 106-33 (3d ed. 1998) ("[A]ssuming that Congress did in fact intend to codify both *Ben-Hur* and *Zahn*, there exists no rational construction of the text of the statute that could dictate that result.").

abandoning our own duty to interpret the law. *See also Moskal v. United States*, 498 U.S. 103, 108 (1990); *Jones v. Brown*, 41 F.3d 634, 639 (Fed. Cir. 1994) (holding that "differences in judicial interpretation of a statute" do not prove "the statute's ambiguity"). Indeed, on many occasions this court has held that a statute was plain and unambiguous despite a contrary holding by a sister circuit. *See, e.g.*, *Lee v. Boeing Co.*, 123 F.3d 801, 806 (4th Cir. 1997); *United States v. Wildes*, 120 F.3d 468, 471 (4th Cir. 1997).

Rosmer further maintains that § 1367 is at least ambiguous as to whether the statute overrules *Zahn*. But as we discussed in Part III.A., § 1367 is not ambiguous at all. And the Fifth and Seventh Circuits have likewise held that the statute is unambiguous. *See Abbott Labs.*, 51 F.3d at 528-29; *Stromberg*, 77 F.3d at 930-31. For the reasons stated previously, we agree with those holdings. Statutory analysis cannot operate as a post-hoc justification for permitting legislative history to trump the plain meaning of the text.

D.

Rosmer finally argues that interpreting § 1367 to include supplemental jurisdiction for class actions would be an absurd result. Both Rosmer and Pfizer present strong policy arguments as to why § 1367 should or should not include class actions within its scope. Rosmer maintains that federal courts should play a limited role in adjudicating state law claims in diversity actions, and should not err on the side of permitting these types of claims to be swept into the federal system. Pfizer, by contrast, points out that for reasons of efficiency and economy, closely related claims should be tried in a single action.

It is not our place to balance these competing policies. For us to say which party makes a superior policy argument would betray a misunderstanding of the role of courts in our federal system. The plain text of § 1367 is not so "absurd" that we should disregard the will of Congress. *See Abbott*, 51 F.3d at 529. Indeed, having class actions resolved in one forum could potentially improve judicial efficiency and cut the cost of litigation. And, of course, all supplemental claims in a class action brought into federal court will have to satisfy the well-established requirements of Rule 23.

IV.

A word, finally, on the position of our fine dissenting colleague. The debate over federal diversity jurisdiction has been a long-running one, and the dissent makes no secret of which side it embraces. It extols "the century-long congressional practice of narrowing rather than expanding diversity jurisdiction." *Infra* at 20. It references the proposition that the "well-established 'congressional purpose' to limit diversity jurisdiction served [the] two salutary goals" of "limiting the rising caseload of diversity cases so that the federal courts would not be overwhelmed by state law questions and unable to resolve federal question cases promptly," and "acceding to the 'rightful independence of state governments,' which 'requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute [§ 1332] defined.'" *Infra* at 20 n.1. Repeating the anti-diversity refrain, the dissent asserts that "[i]nstead of acceding to the 'rightful independence of state governments,' by 'scrupulously confin[ing]' federal diversity jurisdiction, the majority interprets § 1367 in a way that allows the federal courts to determine countless local controversies, involving only state law questions." *Infra* at 26. Expanding diversity jurisdiction by "eliminat[ing] *Zahn*, which the majority apparently proposes, would . . . be untoward — striking a substantial and totally unnecessary blow to the prerogatives of the states." *Infra* at 25 n.3. As if its view of diversity jurisdiction were not already abundantly clear, the dissent reiterates that "the majority's interpretation utterly conflicts with the steadfast Congressional policy of restricting, rather than expanding, diversity jurisdiction." *Infra* at 26. Our holding is therefore "remarkable." *Infra* at 26. The dissent relates the finding of the Federal Courts Study Committee that "the federal courts faced a 'crisis' because of a 'rapidly growing and already enormous caseload.'" *Infra* at 26. It references approvingly the Committee's recommendation that "to address this problem, Congress severely curtail federal diversity jurisdiction." *Infra* at 26. The dissent concludes by reminding us one last time that "[t]he impact of the majority's approach is staggering and totally at odds with a continuous congressional policy — before and after enactment of § 1367 — to *limit* diversity jurisdiction." *Infra* at 28.

It is difficult to view the dissent as anything more than an all-out assault on federal diversity jurisdiction. There are, to be sure, legiti-

mate arguments to be made for and against the exercise of this form of federal jurisdiction. As a set of policy prescriptions, the dissent is in many ways congenial. However, Article III rather explicitly charges Congress with "ordain[ing] and establish[ing]" the structure of the federal courts, the boundaries of their jurisdiction, and the parameters of § 1332. *See Sheldon v. Sill*, 49 U.S. (8 How.) 441 (1850). Notwithstanding the symmetrical satisfaction of leaving federal law to federal courts and state law to state courts, we cannot read § 1367 to reflect a view of diversity as a disfavored form of federal jurisdiction if its language will not coherently parse that way. To do so in the face of § 1367's straightforward statutory mandate is to place our judicial cart before the congressional horse.

Reduced to its analytical core, the dissent argues that § 1367(a) is essentially a federal question jurisdiction statute. In the dissent's view, it must not be read to affect diversity jurisdiction in any way. If § 1367 pertains predominantly to federal questions, then there is virtually no authorization for supplemental jurisdiction in diversity cases. After all, if each and every plaintiff in a diversity case must satisfy § 1332's requirements of complete "diversity" and "matter in controversy," as the dissent contends, *see infra* at 18-20, 22-23, then there remains no supplemental jurisdiction in a diversity action for district courts to exercise. Of course, the dissent must try to argue that § 1367(a) is basically a federal question statute in order to avoid the obvious awkwardness of the omission of Rule 23 from § 1367(b)'s list of exceptions. *See ante* at 7. With all respect to our good colleague, this view of § 1367(a) as fundamentally a federal question statute reflects little more than wishful judicial thinking.

This is so for two reasons, which we have earlier touched upon. First, one searches in vain for a difference in the way § 1367(a) treats federal question and diversity jurisdiction. The terms of the statute are equally applicable to both forms of federal jurisdiction. Consider § 1367(a)'s use of the word "related." Supplemental claims are "related" to the original claim by virtue of their similarity to the original, not because the supplemental claims independently satisfy all jurisdictional requirements. Supplemental jurisdiction is an efficiency concept. And supplemental claims can be as efficiently tied or "related" to an original diversity claim as to an original federal question. To take the statutory language, supplemental claims in a diversity case

can "form part of the same case or controversy under Article III of the United States Constitution" even if they lack the requisite jurisdictional amount. 28 U.S.C. § 1367(a). Congress could so easily have distinguished between federal question and diversity jurisdiction in conferring supplemental jurisdiction under § 1367(a), but it did not differentiate these two forms of federal jurisdiction in any remotely perceivable fashion.

Second, § 1367, by its very terms, presupposes that § 1367(a) applies to diversity proceedings. Section 1367(a) begins with the clause, "Except as provided in subsection[ ] (b) . . . ." This means that the text of § 1367(b) withdraws from § 1367(a) that which would otherwise fall within its purview. And the text of § 1367(b) emphatically refers to diversity jurisdiction. In other words, but for the withdrawal of supplemental jurisdiction in diversity cases in § 1367(b), a corresponding grant of supplemental diversity jurisdiction would exist in § 1367(a). Thus, § 1367(a) must apply to diversity cases. Otherwise, there would be no need to list explicit exceptions to the exercise of supplemental diversity jurisdiction in § 1367(b). It is inconceivable that § 1367(b)'s exceptions explicitly relate to § 1332, but that the section from which the exceptions are taken does not.

The dissent argues that its "reading of § 1367(a) does not render § 1367(b)'s various prohibitions on supplemental jurisdiction unnecessary because § 1367(b) bars parties, after the action has commenced, from invoking supplemental jurisdiction over claims they could not have asserted, consistent with diversity jurisdiction requirements, at the outset." *Infra* at 23-24. But nothing in § 1367(a) indicates that it refers only to claims brought at the beginning of the action. Nothing in § 1367(b) indicates that it applies solely to claims brought after the action has commenced. And nothing in the text of § 1367 indicates that Congress has adopted the dissent's proposed temporal distinction.[5]

---

[5]The same can be said of the dissent's concern that § 1367(b) does not except claims by multiple plaintiffs joined under Rule 20. *See infra* at 24-25. Putting aside the dissent's wholly speculative conclusion that Congress' failure to except such claims will "wreak havoc," *infra* at 24, such is the statute Congress clearly wrote.

The dissent makes a nice conceptual distinction between the nature of federal question and diversity jurisdiction. It is certainly true that "a federal court's jurisdiction in federal question cases cannot be destroyed by the identity or claims of other parties in an action," but that "a federal court's jurisdiction in a diversity case wholly turns on the identity and claims of the parties." *Infra* at 23. Simply to state this distinction in the abstract is insufficient. It is up to Congress to transmute the distinction into a dispositive difference in the text of legislation. That is precisely what Congress has not done.

Much of the dissent is a pastiche of legislative history and policy prescription, with quotations from the Federal Courts Study Committee thrown in for good measure. Though we see no reason to examine § 1367(a)'s legislative history in view of the straightforward reading to which the statute lends itself, it is nevertheless worth noting that the circumstances surrounding the creation of the legislative history in fact support our interpretation. The drafters of § 1367 apparently realized that they failed to except class actions under Rule 23 from § 1367(a)'s grant of supplemental jurisdiction. In an attempt to rectify matters, they put together a *post-hoc* legislative history stating that § 1367(a) was not intended to overrule *Zahn. See* H.R. Rep. No. 101-734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 n.17. Three drafters noted the effort with admirable candor:

> [O]n its face, section 1367 does not appear to forbid supplemental jurisdiction over claims of class members that do not satisfy section 1332's jurisdictional amount requirement, which would overrule *Zahn* . . . . [There is] a disclaimer of intent to accomplish this result in the legislative history. . . .

This same observation is sufficient to meet the dissent's further objection that the majority is overruling *Strawbridge v. Curtiss. See infra* at 25-26. The majority, of course, is doing nothing more than interpreting a statute. Rosmer's claim satisfies the requirement of *Strawbridge*. And to say that § 1367 overrules *Strawbridge* is to say that *Gibbs* overruled *National Mutual Insurance Co. v. Tidewater Transfer Co., Inc.*, 337 U.S. 582 (1949) (Congress cannot confer jurisdiction on Article III courts by statute when Article III does not authorize that jurisdiction.). Congress has no more overruled *Strawbridge* than *Gibbs* overruled *Tidewater*.

> It would have been better had the statute dealt explicitly
> with this problem, and the legislative history was an attempt
> to correct the oversight.

Thomas D. Rowe, Jr., Stephen B. Burbank, & Thomas M. Mengler, *Compounding or Creating Confusion About Supplemental Jurisdiction? A Reply to Professor Freer*, 40 Emory L.J. 943, 960 n.90 (1991). In reading the clear language of the statute in the same way that the esteemed drafters of § 1367(a) do, we reach the conclusion they concede to be inescapable.

We have no idea whether, as the drafters intimate, Congress made a "mistake" or "oversight" here. It is not implausible to believe that the legislature desired a single class action, even one in diversity, to be resolved in a single judicial setting. Additionally, Congress may have, rightly or wrongly, imputed a bias in state court against certain out-of-state defendants which it sought to counteract by fortifying diversity jurisdiction. The point is that Congress can take such steps. And in exercising its constitutional prerogatives, Congress is even free to incur the displeasure of the bench. "Mistake" or not, we know that it is not our job to "correct" what Congress has done. The illegitimacy of the judiciary's usurping such a legislative function, either overtly or through strained statutory construction, is self-evident.

## V.

It seems appropriate in conclusion to repair to the simplicity of the statute. Louise Rosmer is of diverse citizenship and her claim exceeds the amount in controversy requirement of 28 U.S.C. § 1332. Consequently, federal courts have original jurisdiction over it. Likewise, due to § 1367, federal courts have supplemental jurisdiction over the claims of all class members whose claims do not exceed $75,000. Section 1367(a) permits supplemental jurisdiction over the "other" related "claims," and § 1367(b) does not except class actions from § 1367(a)'s application.

The straightforward nature of the statutory interpretation here is paralleled by the straightforward route through which Congress can amend the statute. If Congress wishes to exempt diversity class actions from supplemental jurisdiction, it need do nothing more than

insert the words "Rule 23" into § 1367(b)'s list of exceptions. *See Finley*, 490 U.S. at 556. For us to do so, however, would betray a fundamental principle: Fidelity to language lies at the heart of the rule of law. For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

DIANA GRIBBON MOTZ, Circuit Judge, dissenting:

Because § 1367 unambiguously preserves the rule of *Zahn v. International Paper Company*, 414 U.S. 291 (1973), I respectfully dissent.

I.

Section 1367(a) provides in relevant part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, *in any civil action of which the district courts have original jurisdiction,* the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367 (1994) (emphasis added). Thus, § 1367 clearly grants federal courts supplemental jurisdiction over certain claims that are outside the courts' original jurisdiction.

Just as clearly, however, § 1367 *only* grants supplemental jurisdiction where there is first a "civil action of which the district courts have original jurisdiction." *Id.* No original jurisdiction exists here. In diversity cases, like the one at hand, federal courts *only* have original jurisdiction when the "matter in controversy exceeds the sum or value of $75,000" and the controversy is between "citizens of different States." 28 U.S.C. § 1332(a) (1994 & Supp. II 1996). Thus, in diversity cases a federal court cannot exercise supplemental jurisdiction over a claim unless it first has original jurisdiction over a civil action

"between citizens of different states" in which the "matter in controversy" exceeds $75,000.

Section 1332 does not itself state whether each plaintiff in a diversity case must be a citizen of a different state from each defendant, or if only one plaintiff need be of diverse citizenship. Nor does § 1332 state whether each plaintiff in a diversity suit must have a claim in which at least $75,000 is "in controversy," or if all of the plaintiffs' claims may be aggregated to reach the jurisdictional amount, or if only one plaintiff need satisfy the "matter in controversy" requirement.

Since the earliest years of the Republic, however, the Supreme Court has interpreted the diversity jurisdiction statute to require complete diversity of citizenship of each plaintiff from each defendant. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). Moreover, it has long been the rule that each plaintiff in a diversity suit must independently satisfy the diversity statute's jurisdictional amount in controversy. *See Clark v. Paul Gray, Inc.*, 306 U.S. 583, 589 (1939) ("when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court"); *Pinel v. Pinel*, 240 U.S. 594, 596 (1916) (same); *Troy Bank v. Whitehead & Co.*, 222 U.S. 39, 40 (1911) (same). The Court has reasoned that § 1332's two requirements — "diversity" and "matter in controversy" — are jurisdictional, and the statute's grant of "original jurisdiction" to federal courts depends upon each and every plaintiff satisfying each of those requirements.

The Supreme Court has also held that § 1332's dual requirements generally apply in diversity-based class actions. Thus, in *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 236-67 (1921), the Court concluded that § 1332 mandates that each named plaintiff must be completely diverse from each named defendant, although unnamed plaintiffs need not be diverse. In *Snyder v. Harris*, 394 U.S. 332 (1969), and *Zahn*, the Court applied the "matter in controversy" requirement even more strictly, holding that this requirement applied to both named and unnamed parties.

In *Snyder*, the Court concluded that where *no* members of the plaintiff class possessed a claim meeting the "matter in controversy" requirement they could not aggregate their claims; and so a federal court had no jurisdiction over such a class action. *Id.* at 336. The Court relied on the century-long congressional practice of narrowing rather than expanding diversity jurisdiction. It noted that "since the first judiciary act in 1789" Congress has repeatedly *increased* the amount necessary to meet the "matter in controversy" requirement and, when doing so, re-enacted the "matter in controversy" rule "against a background of judicial interpretation" that restrictively construed it. *Snyder*, 394 U.S. at 333-39. Indeed, as the *Snyder* Court explained, Congress had accepted restrictive judicial interpretation of § 1332 for so long that this interpretation had to be recognized as more than a "judge-made formula." *Id.*[1]

In *Zahn*, the Supreme Court considered whether *Snyder* applied to diversity-based class actions like the one at issue here, in which only the named plaintiff satisfied the "matter in controversy" requirement. *See Zahn*, 414 U.S. at 292. In determining whether each plaintiff in the class, named or unnamed, needed to satisfy the "matter in controversy" requirement of § 1332 in order for a federal court to exercise jurisdiction, the Court looked to its previous interpretations of § 1332 for both class actions and non-class actions. *See id.* at 295-300. Relying on its "long standing construction of the 'matter in controversy' requirement of § 1332," the *Zahn* Court concluded that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case. *Id.* at 301. In other words, 'one plaintiff may not ride in on another's coattails.'" *Zahn*, 414 U.S. at 301.

---

[1]The *Snyder* Court noted that the well-established "congressional purpose" to limit diversity jurisdiction served two salutary goals: (1) limiting the rising caseload of diversity cases so that the federal courts would not be overwhelmed by state law questions and unable to resolve federal question cases promptly, and (2) acceding to the "rightful independence of state governments," which "requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute [§ 1332] defined." *Id.* at 339-40 (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).

In so concluding, the Court made clear that its holding was premised upon its construction of § 1332's "matter in controversy" requirement. *Id.* at 299 ("Th[e] doctrine is based . . . upon this Court's interpretation of the statutory phrase 'matter in controversy.'") (quoting *Synder*, 394 U.S. at 336-67). The *Zahn* Court found that the language of § 1332 was best interpreted to require every class member to satisfy that requirement; thus, it held, when a plaintiff files a diversity-based class action in federal court, each member of the class must allege a claim in which "the matter in controversy" exceeds $75,000 in order for a federal court to have jurisdiction over the action. *See Zahn*, 414 U.S. at 301.

In summary, the Supreme Court has definitively interpreted § 1332's requirements in *Strawbridge*, *Ben-Hur*, *Snyder* and — most important to this case — *Zahn*. The Court has not in any way limited the holding it declared less than thirty years ago in *Zahn*. Nor has Congress amended § 1332 to overrule *Zahn*. This requires us to find that the rule established in *Zahn* stands and governs this case. Before the district court could take advantage of § 1367's grant of supplemental jurisdiction, it first must have possessed jurisdiction over the action under § 1332. However, because not every member of the class in this diversity-based class action "satisf[ies] the jurisdictional amount," *Zahn*, 414 at 301, the district court possessed no original jurisdiction over the action under § 1332, and so could not exercise supplemental jurisdiction under § 1367.

## II.

Nevertheless, Pfizer maintains, and the majority holds, that when, in 1990, Congress enacted the supplemental jurisdiction statute, 28 U.S.C. § 1367, it legislatively overruled *Zahn*. Nothing in § 1367 remotely suggests that this statute eliminates or modifies any of the requirements for original diversity jurisdiction that the Supreme Court has long held mandated by § 1332. Rather, without in any way qualifying or limiting § 1332's requirement, § 1367 specifically refers to § 1332 as a possible basis for the original jurisdiction necessary to any "supplemental jurisdiction." *See* 28 U.S.C. § 1367(b). The majority's holding that Congress chose § 1367 as a vehicle to overrule *Zahn*, a case interpreting § 1332, is therefore puzzling.

To accomplish this incongruous result, the majority must look past the Supreme Court's clear and definitive interpretations of § 1332 and break off the claims of some plaintiffs from those of the other plaintiffs in the class. This approach essentially queries whether *any* of the plaintiffs in the class could have — had they foregone a class action — brought a proper diversity suit in federal court against the named defendants. If the district court would have had original jurisdiction over such a hypothetical suit, the majority would allow § 1367 to provide supplemental jurisdiction over the remaining class members. This approach puts the proverbial cart before the horse. In a diversity-based class action, no federal jurisdiction exists *at all* unless and until the requirements of § 1332, including those set forth in *Zahn*, have been satisfied.

This is not to say that § 1367 requires a district court to assess "original jurisdiction over the *whole* action at the initiation of a complaint" in every case, regardless of the claims set forth in the complaint. *Ante* at 7 (describing the rationale in *Leonhardt v. Western Sugar Co.*, 160 F.3d 631, 640 (10th Cir. 1998)). However, a district court surely must examine a complaint in which the asserted basis of federal jurisdiction is diversity of citizenship to determine whether the complaint meets § 1332's jurisdictional prerequisites. Moreover, following this procedure — which is, after all, the established means of assessing diversity jurisdiction — does not render "superfluous" the language in § 1367(a) giving courts supplemental jurisdiction over "'all other claims that are so related to claims in the action within such original jurisdiction.'" *Ante* at 8 (quoting 28 U.S.C. § 1367 (a)). That statutory language retains important meaning; it permits supplemental jurisdiction over claims in non-diversity cases and, subject to the limitations in § 1367(b), over additional claims in diversity cases after a proper diversity complaint has been filed.

Nor does retaining the *Zahn* rule affect the holdings in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and *Finley v. United States*, 490 U.S. 545 (1989). *Cf. ante* at 9-10. *Gibbs* is a federal question case and *Finley* was brought under the Federal Tort Claims Act. Neither is a diversity case. The distinction between federal question cases (or, for that matter, any case with a federal jurisdictional basis other than § 1332) and diversity cases is critical. Federal question cases do indeed involve one federal "claim" creating

jurisdiction, which is viewed independently from other claims in the complaint that are premised upon supplemental jurisdiction. This is because a federal court's jurisdiction in federal question cases cannot be destroyed by the identity or claims of other parties in an action. In contrast, a federal court's jurisdiction in a diversity case wholly turns on the identity and claims of the parties.

Furthermore, the linchpin of the majority's statutory analysis — reliance on the prohibitions listed in § 1367(b) — fatally undermines, rather than supports, the majority's holding.

Section 1367(b) provides:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of Section 1332.

28 U.S.C. § 1367(b).

The majority maintains that because "nowhere in § 1367(b) does it exempt from the normal rules of supplemental jurisdiction persons made parties under Rule 23," a court would have to "rewrite the statute to insert Rule 23 into § 1367(b)'s list of exceptions" to retain *Zahn*. *Ante* at 7. But this is certainly not the case if "original jurisdiction" in § 1367(a) is given its natural meaning; in diversity cases, that meaning is the one authoritatively determined by the Supreme Court in *Strawbridge*, *Ben-Hur*, *Snyder*, *Zahn*, etc. Indeed, the omission of Rule 23 from § 1367(b)'s list is hardly surprising given that the diversity jurisdiction requirements, as articulated in these cases, was codified in the "original jurisdiction" requirement of § 1367(a). Moreover, this reading of § 1367(a) does not render § 1367(b)'s various prohibitions on supplemental jurisdiction unnecessary because § 1367(b)

bars parties, after the action has commenced, from invoking supplemental jurisdiction over claims they could not have asserted, consistent with diversity jurisdiction requirements, at the outset.[2]

On the other hand, if the majority were correct and § 1367(a) did *not* recognize the diversity jurisdiction requirements authoritatively set forth by the Supreme Court in *Strawbridge*, *Zahn*, etc., then § 1367(b)'s limited use of Rule 20 — only to prevent district courts from exercising supplemental jurisdiction over the permissive joinder of "claims by plaintiffs against persons made parties," i.e., claims against defendants — would wreak havoc. The majority contends that, if *one* plaintiff satisfies the requirements of § 1332, the district court possesses original jurisdiction under that statute and so may exercise supplemental jurisdiction under § 1367 over related claims. If the majority were correct, then § 1367 would permit a plaintiff meeting § 1332's jurisdictional requirements to use Rule 20 to join as a plaintiff *any party* who possesses a related claim *even if that plaintiff destroyed complete diversity*.

The majority's approach strips § 1367(b) of all logic. To take that approach, we must believe that Congress fashioned a statute that care-

---

[2]Specifically, § 1367(b) prohibits supplemental jurisdiction over claims of would-be plaintiffs, who attempt to join an ongoing diversity action under Rule 19 or to intervene in such an action under Rule 24, when the presence of these plaintiffs would destroy diversity jurisdiction, i.e., would be "inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b). Section 1367(b) also prevents plaintiffs in an ongoing diversity action from employing supplemental jurisdiction to assert claims "inconsistent with the jurisdictional requirements of" § 1332, *id.*, by barring plaintiffs from asserting claims against non-diverse defendants who intervene under Rule 24, are impleaded under Rule 14, joined under Rule 19, or joined to a cross-claim or counterclaim under Rule 20. (Thus, contrary to the majority's assertion, *ante* at 9, the inclusion in § 1367(b) of a prohibition on supplemental jurisdiction over claims against non-diverse defendants under Rule 20 does, indeed, serve a valid "need," i.e. prohibiting counter and cross-claims by plaintiffs against defendants brought into an existing diversity action. *See* Fed. R. Civ. Pro. 13(h) ("Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20.").)

fully preserves limitations on diversity jurisdiction after an action has been filed (by barring plaintiffs from using Rules 14, 19, and 24 to join claims against non-diverse defendants and by barring would-be non-diverse plaintiffs from joining or intervening in an ongoing diversity action under Rules 19 and 24), yet permits persons whose claims would defeat diversity to join an action at the outset (by allowing a non-diverse plaintiff to use Rule 20 to join a diversity action at its commencement). Furthermore, if the majority were correct, § 1367(b)'s prohibition on would-be non-diverse plaintiffs joining an action under Rule 19 or intervening under Rule 24 would be hollow indeed; a plaintiff could simply dismiss his original action and refile, joining the non-diverse plaintiff under Rule 20 — even though that non-diverse plaintiff could not have joined the original action under Rule 19, or intervened under Rule 24.

Moreover, under the majority's interpretation, § 1367 overrules not just *Zahn*, but also the venerable precedent established almost 200 years ago in *Strawbridge v. Curtiss*. Before today, plaintiffs have not been allowed to use ancillary or pendent jurisdiction to circumvent *Strawbridge*.[3] But, if the majority's approach is followed, plaintiffs

---

[3]The sole exception to *Strawbridge*'s well-established restrictive interpretation of § 1332 is *Ben-Hur* (unnamed plaintiffs in diversity-based class actions need not have diverse citizenship). Without explanation, the majority and Professor Moore suggest that it is impossible to interpret § 1367 to preserve both *Ben-Hur* and *Zahn*. *See ante* at 11 n.4 (quoting 16 James W. Moore, et al., *Moore's Fed. Practice* ¶ 106.44 at 106-33 (3d ed. 1998). Although I hate to disagree with such respected authorities as my colleagues and Professor Moore, the plain textual reading of § 1367, which I espouse, preserves both *Ben-Hur* and *Zahn*. Both cases interpret the diversity jurisdiction requirements in § 1332; to exercise original diversity jurisdiction under § 1332, a court must follow both cases, and thus for a court with diversity jurisdiction to exercise supplemental jurisdiction under § 1367, it must, by definition, also follow both *Ben-Hur* and *Zahn*. Nor is there anything untoward about this. Indeed, to preserve the *Ben-Hur* holding but eliminate *Zahn*, which the majority apparently proposes, would itself be untoward — striking a substantial and totally unnecessary blow to the prerogatives of the states. As the Supreme Court noted in *Snyder*, in words equally applicable here, for a court to adopt an expansive interpretation of the amount in controversy requirement, as the majority does, when, because of the *Ben-Hur* rule, "only one member of the entire class is of diverse citizenship could transfer into the federal courts numerous local controversies involving exclusively questions of state law." *Snyder*, 394 U.S. 340.

could do precisely this. No longer would plaintiffs need to concern themselves with establishing complete diversity. Rather, the presence of one diverse plaintiff would allow joinder of any related claims by non-diverse plaintiffs. Instead of acceding to the "rightful independence of state governments," by "scrupulously confin[ing]" federal diversity jurisdiction, the majority interprets § 1367 in a way that allows the federal courts to determine countless local controversies, involving only state law questions. *Snyder*, 394 U.S. at 340.

In addition to upsetting long-established precedent, the majority's interpretation utterly conflicts with the steadfast Congressional policy of restricting, rather than expanding, diversity jurisdiction. The majority's holding would be remarkable even if compelled by the statutory text. But nothing in § 1367 requires this holding. Indeed, it runs directly counter to the statute's plain language, which permits a federal court to exercise supplemental jurisdiction *only* when it first has "original jurisdiction" over a claim.

Nor does the majority's approach find any support in § 1367's legislative history. Congress enacted § 1367 in response to a suggestion of the fifteen-member Federal Courts Study Committee, which had been established by Congress "to make a complete study of the courts of the United States and of the several States and transmit a report to the President, the Chief Justice of the United States, [and] the Congress . . . on such study." Federal Courts Study Act, Pub. L. No. 100-702, §§ 101-109, 102 Stat. 4642 (1988). After months of study, numerous meetings, and four public hearings, the Committee issued its 200-page report. That report found that the federal courts faced a "crisis" because of a "rapidly growing and already enormous caseload," and recommended that to address this problem, Congress severely curtail federal diversity jurisdiction. Report of the Federal Courts Study Committee at 4, 14-15 (April 2, 1990). The Study Committee noted that if Congress followed this recommendation it would "free up the time of the federal courts" to be "more effective protectors of federal rights"; among the recommendations offered to further this goal was "placing a firm statutory foundation under 'pendent party jurisdiction.'" *Id.* at 15; *see also id.* at 47-48. Congress drafted § 1367 to adopt the recommendation as to "pendent party jurisdiction," which was partially based on disagreement with *Finley v. United States*, 490 U.S. 545 (1989) (holding pendent party jurisdic-

tion unavailable in a federal question case). *See* H.R. Rep. No. 101-734, *reprinted in* 1990 U.S.C.C.A.N. 6860, 6873 ("This section implements a recommendation of the Federal Courts Study Committee found on pages 47 and 48 of its Report.").

Although it is clear that Congress did not determine to accept the Study Committee's suggestion to curtail diversity jurisdiction, it is equally clear that Congress did not determine to expand diversity jurisdiction by enactment of § 1367, as the majority's interpretation of that statute would. *See* H.R. Rep. No. 101-734, *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 (explaining § 1367 "is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to *Finley*"). Indeed, the House Report accompanying § 1367 (which was adopted by the Senate Judiciary Committee in its consideration of the proposed legislation, *see* 136 Cong. Rec. S17580-81 (daily ed. Oct. 27, 1990)), plainly states that the new statute was merely intended to "restore the pre-*Finley* understandings of the authorization for and limits on other forms of supplemental jurisdiction." H.R. Rep. No. 101-734, *reprinted in* 1990 U.S.C.C.A.N. 6860, 6874. Moreover, the Report includes an express notation that *Zahn* was to survive enactment of § 1367. *Id.* at 6875 n.17. This is more than a vague and isolated comment or a mere "buried reference in a committee report." *Cf. ante* at 16. Congress has — in the official committee report accompanying the statute which both Houses adopted — expressly provides that § 1367 was not "to affect the jurisdictional requirements" of § 1332 and that *Zahn* was to survive the enactment of § 1367.[4]

The majority's interpretation of § 1367 also calls attention to the omission in the legislative history of even a suggestion that Congress intended § 1367 to eviscerate 200 years of diversity jurisprudence

---

[4]Lest there be a suggestion that my membership on the Federal Courts Study Committee has led me to an unprincipled acceptance of its views, I note that as a member, I voted *against* its recommendation that Congress limit diversity jurisdiction. *See* Report of the Federal Courts Study Committee at 42-43. Although the result the majority reaches today may better accord with my personal policy views, I cannot concur in its holding given the clear statutory language adopted by the appropriate policymaker — the Congress.

going back to *Strawbridge*. The impact of the majority's approach is staggering and totally at odds with a continuous congressional policy — before and after enactment of § 1367 — to *limit* diversity jurisdiction. *See, e.g.*, Pub. L. No. 85-554 (raising jurisdictional amount from $3,000 to $10,000 in 1958); Pub. L. No. 100-702 (raising jurisdictional amount from $10,000 to $50,000 in 1988); Pub. L. No. 104-317 (raising jurisdictional amount from $50,000 to $75,000 in 1996). One would think that had Congress embarked upon such an important reversal of course, its actions would have generated at least some discussion and debate. Instead, we find not even a snippet of legislative history — not a remark at a hearing, not a passage in a committee report, not a floor comment — suggesting that in § 1367 Congress intended to overrule *Strawbridge* and *Zahn* and so broadly expand the diversity jurisdiction of the federal courts. Indeed, § 1332's original jurisdiction requirements were "so plainly etched in the federal courts prior to [the enactment of § 1367] that had there been any thought of departing from these decisions . . . some express statement of that intention would surely have appeared, either in the [statute] or in the official commentaries." *Zahn*, 414 U.S. at 302; *see also Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266-67 (1979) (such "silence" in legislative history "is most eloquent, for such reticence while contemplating an important and controversial change in existing law is unlikely").

## III.

In short, the majority today fashions an interpretation of § 1367 that derives support from neither its text nor its history; in result, the majority creates a law that Congress never enacted and never intended to enact. There is no reason why this court should interpret § 1367 in a manner contrary to its language, particularly when the statute's legislative history, as well as longstanding congressional policy limiting diversity jurisdiction, confirm the correctness of an interpretation that gives effect to the plain statutory language. Accordingly, I respectfully dissent.