**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LOUISE ROSMER, on behalf of herself
and as class representative,
                    *Plaintiff-Appellant,*

v.                                              No. 00-2224

PFIZER INCORPORATED,
                    *Defendant-Appellee.*

Filed: November 14, 2001

---

## ORDER

---

Appellant filed a petition for rehearing and rehearing en banc.

On the petition for rehearing, Chief Judge Wilkinson and Judge Hall (SUSCJ, 9CCA) voted to deny. Judge Motz voted to grant.

A member of the Court requested a poll on whether this case should be reheard en banc. The poll did not attract a majority of the judges in active service.

Judges Widener, Niemeyer, Luttig, and Motz voted for rehearing en banc. Chief Judge Wilkinson and Judges Williams, Michael, and Gregory voted against rehearing en banc. Judges Wilkins, Traxler, and King were disqualified from participation in the poll on rehearing en banc.

Chief Judge Wilkinson filed an opinion concurring in the denial of rehearing en banc. Judge Niemeyer filed an opinion dissenting from the denial of rehearing en banc. Judge Motz filed an opinion dissent-

ing from the denial of rehearing en banc, in which Judge Luttig joined.

    The petition for rehearing and rehearing en banc are hereby denied. Entered at the direction of Chief Judge Wilkinson for the Court.

For the Court

/s/ Patricia S. Connor
Clerk

WILKINSON, Chief Judge, concurring in the denial of rehearing en banc:

The panel majority opinion sets out at length my view of the proper interpretation of 28 U.S.C. § 1367. *See Rosmer v. Pfizer Inc.*, 263 F.3d 110 (4th Cir. 2001). I do not intend to reiterate my position here. However, I do wish to state briefly my points of difference with my brother's dissent to the denial of rehearing en banc in this case.

Some of the dissent's objections are different from those expressed in the dissent from the panel majority opinion. *See Rosmer*, 263 F.3d at 122-29 (Motz, J., dissenting). Nevertheless, there is a common denominator. Indeed, the two dissents bring to mind Yogi Berra's immortal words: "It's like deja vu all over again." Like the earlier dissent's reading of § 1367, this dissent's textual analysis represents a thinly-veiled attack upon diversity jurisdiction. The opinion begins with policy, ends with policy, and sprinkles plenty of policy arguments in between. *See post* at 8-12 and 17. Because I do not believe that the text of § 1367 is consistent with the dissent's policy concerns, and because I do not believe that the federal courts are empowered to employ policy arguments to trump the plain meaning of Congress' words, I concur in the denial of rehearing en banc.

I.

The dissent's approach rests in unadorned fashion upon two premises. The first is that diversity is a disfavored form of federal jurisdiction. And the second is that Rule 23 is a disfavored rule in the Federal Rules of Civil Procedure. The dissent objects that the majority opinion "substantially expand[s] diversity jurisdiction in the federal courts." *Post* at 8. It reiterates that "[b]y opening federal courts to virtually every class action involving state law, the panel opinion broadly expands federal jurisdiction in diversity cases." *Post* at 9. It submits that the majority opinion's reading of § 1367 "requires the court to put blinders on and thus ignore long-standing principles of federal jurisdiction and class action law." *Post* at 9. In a similar vein, the panel majority ignores "whether Congress intended to preserve the traditional principles of jurisdiction." *Post* at 10. The result the majority opinion reaches is "traumatic." *Post* at 10.

Continuing its policy brief, the dissent observes that diversity jurisdiction "inherently . . . comes into tension with the traditional division of judicial responsibility between the states and the federal government." *Post* at 17. "And for that reason, and other more pragmatic ones," it explains, "diversity jurisdiction has never been favored with aggressive expansion, either by Congress or the courts." *Post* at 17. "Indeed," it relates, "over the years, Congress has continually and without exception taken modest steps to limit the scope of diversity jurisdiction in this sensitive area of federalism." *Post* at 17. As if the real source of objection to the panel majority opinion were not already abundantly clear, the dissent cannot resist adding that the panel majority "lack[s] a sensitivity for this overarching policy in the federal structure," and "not only amplifies manyfold the circumstances in which diversity jurisdiction is available, but also increases vastly the power of federal class actions, all at the expense of the states' long-standing privilege to decide state-law cases in their own courts." *Post* at 17. The panel majority decision is therefore "a momentous mistake." *Post* at 17.

The consequences of the two candidly stated premises that animate these policy prescriptions are quite remarkable. We are being asked to arrogate unto ourselves, under the guise of interpretive maxims or otherwise, the authority to establish the parameters of our own jurisdiction. This is fundamentally at odds with the separation of powers and the constitutional scheme.

Whether we like it or not, Congress has long had the authority to set the bounds of federal jurisdiction. *See* U.S. Const. art. III, § 1. Congress has long had the authority to invest diversity jurisdiction in the federal courts. *See* 28 U.S.C. § 1332. And assuming the strict requirements of Fed. R. Civ. P. 23 can be satisfied, the resolution of class actions is likewise part of the accepted business of the federal judiciary.

## II.

The text and statutory structure of § 1367 are straightforward. Section 1367(a) is a general grant of supplemental jurisdiction, stating that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction

over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). Section 1367(b) contains a list of exceptions to the supplemental jurisdiction authority conferred by § 1367(a). Rule 23 is not among them.

The dissent advances a number of suggestions as to how we might accomplish the insertion of Rule 23 into § 1367(b)'s list of exceptions. These suggestions simply do not work. The dissent first argues that there was no "civil action of which the district courts have original jurisdiction" in this case, as required by § 1367. This is because the only "civil action" actually commenced was a class action, and "the class cannot be broken apart for purposes of creating original jurisdiction and then mended back together under the illusion that the class members who destroyed original jurisdiction can be converted to 'supplemental' members under § 1367." *Post* at 12.

The problems with this objection are manifold. First, as the majority opinion states, *see Rosmer*, 263 F.3d at 116, the idea that a "civil action" in § 1367(a) means the entire class action and not just Rosmer's claim renders virtually superfluous other language in the statute — in particular, the phrase "over all other claims that are so related to claims in the action within such original jurisdiction." § 1367(a). The language of § 1367(a) itself contemplates that a "civil action" refers to one claim in which original jurisdiction is proper. *Id.* The other claims that are "so related to claims in the action within such original jurisdiction" are properly in federal court because of § 1367's grant of supplemental jurisdiction. *Id.*

In addition, § 1367(b) contains an exception for Rule 20. And Rule 20 authorizes permissive joinder of parties at the beginning of an action, not just in an ongoing diversity action. Indeed, a plaintiff will usually join all Rule 20 defendants in the initial complaint rather than waiting to do so later. Thus, if the dissent were correct, there would be no need to except Rule 20 from the grant of supplemental jurisdiction in § 1367(a). Section 1367(a) itself would except Rule 20 from the statute's conferral of supplemental jurisdiction.

The dissent next advances the novel argument that the supplemental claims of the unnamed class members are not part of the same con-

stitutional case under *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), as required by § 1367(a). *Post* at 12-13. Rather, the dissent submits, the "absent class members' claims are bundled with representative parties' claims in order to facilitate adjudication." *Post* at 13.

To my knowledge, this suggestion has not been advanced by any other judge or court. The dissent cites no specific authority to support it. Instead, it states that "all the jurisprudence of Rule 23(b)(3) class actions and of Article III of the Constitution" supports its view. *Post* at 13. What likely accounts for the dissent's failure to reference case law or academic commentators is that its proposal leads inescapably to the conclusion that Rule 23 somehow runs afoul of the case or controversy requirement of Article III.

Indeed, the dissent states that "[t]here is no constitutional requirement prohibiting two constitutional cases from being adjudicated simultaneously, and the simultaneous prosecution of similar claims for judicial efficiency is the justification for Rule 23(b)(3)." *Post* at 14. But I am at a loss to identify the doctrinal foundations for such a position. A class action is, by definition, one action — i.e., one case or controversy. It certainly contains many claims by many plaintiffs. But the suggestion that each of those claims constitutes a separate constitutional case or controversy is quite misplaced. The traditional legal understanding is that a class action must satisfy the transactional test of *Gibbs*. *See* 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1778 (1986) (citing cases holding that "an action can be brought under subdivision (b)(3) even though there is not a complete identity of facts relating to all class members, as long as a 'common nucleus of operative facts' is present, a test very similar to that used to determine the application of the doctrine of pendent jurisdiction [under *Gibbs*]") (footnotes omitted). *See also* William A. Fletcher, *"Common Nucleus of Operative Fact" and Defensive Set-Off: Beyond the Gibbs Test*, 74 Ind. L.J. 171, 174 (1998) (Symposium: A Reappraisal of the Supplemental-Jurisdiction Statute: Title 28 U.S.C. § 1367).

The dissent claims that "the constitutionally distinct nature of the claims aggregated under Rule 23(b)(3) was the backbone of the Supreme Court's decision in *Zahn*." *Post* at 13 (referring to *Zahn v.*

*Int'l Paper Co.*, 414 U.S. 291 (1973)). But the *Zahn* Court never said anything to the effect that claims aggregated in a class action are "constitutionally distinct." Indeed, *Zahn* does not so much as mention *Gibbs*. Thus, the word "backbone" is doing an awful lot of inferential work in that contention.

In addition, the dissent's view of class actions is flatly inconsistent with the Supreme Court's decision in *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356 (1921). Realizing that *Ben-Hur* strongly cuts against its contention that claims aggregated under Rule 23(b)(3) are "constitutionally distinct," the dissent suggests that *Ben-Hur* "likely would not apply to 23(b)(3) class actions." *Post* at 14 n.2. No authority of which I am aware supports this assertion. The dissent offers none. Again, I am at a loss to identify any doctrinal source for this argument.

Not only is there a lack of authority to support the dissent's view of class actions, but its position also generates perverse implications from its own perspective. The dissent purports to desire to limit the scope of the class action device, accusing the panel majority in *Rosmer* of "increas[ing] vastly the power of federal class actions, all at the expense of the states' long-standing privilege to decide state-law cases in their own courts." *Post* at 17. But in freeing the claims of absent class members from the case or controversy requirement, the dissent opens the jurisdictional doors in federal class actions wide open. The dissent is the unwitting advocate of expanding the use of class actions in federal court.

The dissent's next contention is that "Congress would never even have considered adding Rule 23 to the list" of § 1367(b)'s exceptions because "Rule 23 does not provide for the *addition* of parties and their claims." Rather, "[a]ll parties and claims are already included as the underlying case over which the court must have jurisdiction." *Post* at 15. But in so asserting, the dissent's analysis proves no more persuasive than any argument that assumes its conclusion. Nothing supports the contention that "Rule 23 cannot be broken into an underlying claim and added claims," *Post* at 16, except the fact that the dissent says so.

The dissent's final plea is that we consult the legislative history. This argument has already been canvassed at length in *Rosmer*. *See*

263 F.3d at 117-18, 121-22. I see no reason to revisit it here. The suggestion that Congress could not possibly have meant what it said is self-evidently erroneous. The reason that Rule 23 is not included in § 1367(b)'s list of exceptions may very well have to do with the "judicial efficiency" concerns that the dissent concedes to be the virtue of the class action device. *Post* at 8. Congress provided for a single class action to be resolved in a single federal forum, assuming it satisfies Rule 23's requirements and jurisdiction exists over the named plaintiff's claim. Congress has struck the balance between limiting diversity and enhancing efficiency, and it is not for us to undo it.

## III.

I may well share the dissent's policy predilections. What I absolutely do not share, however, is the view that our notions of federal jurisdiction trump those of the coordinate branch of government to which such questions are constitutionally entrusted. We are being called upon to express our policy preferences against diversity jurisdiction and against class actions by the bald amendment of a statute from the bench. We are being asked quite transparently to insert the words "Rule 23" into § 1367(b)'s list of exceptions where Congress has not included them. It is difficult to imagine a more obvious situation for the application of *expressio unius est exclusio alterius*. Section 1367(b) includes Rules 14, 19, 20, and 24 among its list of exceptions. It does not include Rule 23. The federal judiciary is being invited to perform a legislative trick.

NIEMEYER, Circuit Judge, dissenting:

On the poll to rehear this case *en banc*, three members of the court unfortunately found themselves unable to participate, leaving a four-four vote and denying the possibility that the court *en banc* can reconsider this important case. Because I believe that this vote leaves us with an opinion advancing a fundamentally flawed interpretation of supplemental jurisdiction under 28 U.S.C. § 1367 and substantially expanding diversity jurisdiction in the federal courts, I write in dissent from our denial of an *en banc* hearing.

## I

Louise Rosmer, on behalf of herself and a class of all persons similarly situated, filed this class action against Pfizer, Incorporated, in

South Carolina state court, for injury caused by the antibiotic Trovan. She asserted only state-law causes of action. When Pfizer removed the case to federal court, relying on diversity jurisdiction under 28 U.S.C. § 1332, Rosmer filed a motion to remand the case to state court on the ground that class members could not satisfy the jurisdictional requirements of 28 U.S.C. § 1332. She acknowledged, however, that she and Pfizer were of diverse citizenship and that the amount in controversy between them exceeded $75,000.

The district court denied Rosmer's motion to remand and retained jurisdiction over the case, concluding that it had diversity jurisdiction over Rosmer's individual claim against Pfizer and that it had supplemental jurisdiction, under 28 U.S.C. § 1367, over class members whose claims were for less than the $75,000 minimum amount required for diversity jurisdiction. By a split decision, a three-judge panel of this court affirmed the district court. *See Rosmer v. Pfizer, Inc.*, 263 F.3d 110 (4th Cir. 2001). On the poll for rehearing *en banc*, four judges voted in favor of rehearing the case, four voted against rehearing the case, and three recused themselves.

The panel opinion, which has thus been left standing, holds that, in a class action, 28 U.S.C. § 1367 confers federal subject matter jurisdiction over class members whose individual claims do not satisfy the amount in controversy requirement of 28 U.S.C. § 1332, "as long as diversity jurisdiction exists over the claims of one named plaintiff." *Rosmer*, 263 F.3d at 112. With this dramatic holding, the court concludes that virtually *every* class action under state law may be brought in federal court because only one claimant needs to satisfy the jurisdictional requirements of § 1332. By opening federal courts to virtually every class action involving state law, the panel opinion broadly expands federal jurisdiction in diversity cases.

When it adopted 28 U.S.C. § 1367, Congress never intended this startling conclusion, and the plain language of § 1367 does not justify it. To read § 1367 as the panel majority does requires the court to put blinders on and thus ignore long-standing principles of federal jurisdiction and class action law. The panel's construction also compels the conclusion that Congress *sub silentio* overruled the Supreme Court's seminal decision in *Zahn v. International Paper Co.*, 414 U.S.

291 (1973), which Congress stated, in its legislative history, it did not intend to do when it enacted § 1367.

## II

No one disputes that Congress enacted 28 U.S.C. § 1367 to overrule the Supreme Court's decision in *Finley v. United States*, 490 U.S. 545 (1989) (holding that federal courts were not conferred pendent-party jurisdiction under then-existing law), and to expand the concept of pendent-claim jurisdiction in its then-existing form, as articulated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), to include pendent-party jurisdiction. In other words, § 1367 was enacted to cover not only related claims of parties, but also related claims of nonparties. The only limitation imposed was that the related claims must be part of a single, constitutional case. *See* 28 U.S.C. § 1367(a). As the Court in *Gibbs* articulated:

> Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that *the entire action before the court comprises but one constitutional "case."* . . . *The state and federal claims must derive from a common nucleus of operative fact*.

*Id.* (emphasis added).

While § 1367 expanded supplemental jurisdiction to include related claims of nonparties, Congress never intended to expand original jurisdiction over the underlying claims to which the pendent claims attached. Yet, the panel opinion concludes that, regardless of whether Congress intended to preserve the traditional principles of jurisdiction, the language of § 1367, perhaps unwittingly, undid the amount in controversy requirement for original jurisdiction. A straightforward reading of § 1367, however, demonstrates that such a traumatic result is erroneous.

The statutory grant of supplemental jurisdiction applies only to "civil action[s] *of which the district courts have original jurisdiction*." 28 U.S.C. § 1367(a) (emphasis added). The first step in any analysis, therefore, is to determine whether the original jurisdiction requirement has been satisfied. The panel majority overlooked this step altogether.

The panel opinion, through a sleight of analytical hand, avoids the first step by converting Rosmer's class action claim into an individual claim to create original jurisdiction and then adding back the absent class action members' claims as "supplemental" claims.[1] Such analyt-

---

[1] It is curious that my good colleague's opinion concurring in the refusal to hear this case *en banc* states on the one hand that, as used in § 1367(a) "a 'civil action' refers to *one claim* in which original jurisdiction is proper," *ante* at 5 (emphasis added), and on the other hand, when referring to a class action, the whole case becomes the civil action, as "Congress provided for a single class action to be resolved in a single federal forum," *id.* at 8. Obviously, when it becomes necessary to avoid the requirement of § 1367(a) that the federal court have jurisdiction over a "civil action" before it can consider supplemental jurisdiction over other claims, the concurring opinion defines "civil action" to be a claim. But when a class action under Rule 23(b)(3) is examined, the opinion acknowledges, as it must, that the "civil action" is the class action. This double standard for analysis continues what I have observed about the panel majority opinion — it functions with the "sleight of analytical hand."

Of course, a class action is one civil action. *See* Fed. R. Civ. P. 2; *id.* 23(b) (stating that a class action is one way of maintaining a civil action). And the "claims" within a civil action are in the aggregate one civil action. It is precisely for this reason that when § 1367(a) requires that the federal court first have jurisdiction over the "civil action," it must be requiring that the court have jurisdiction over the class action. Because each count or claim of Rosmer's civil action is made on behalf of a class, the district court cannot reach the question of supplemental jurisdiction before it satisfies the requirement of original jurisdiction over Rosmer's *class action*. The original jurisdiction requirement cannot be satisfied by considering only Rosmer's personal claim, which constitutes only an analytical part of the "civil action."

Section 1367(a)'s requirement of a constitutional case, which the concurring opinion confuses with a civil action, comes *after* the requirement

ical magic, however, perpetuates a misunderstanding of Federal Rule of Civil Procedure 23, governing class actions.

Unlike the other forms of aggregation permitted under the Federal Rules — impleader, joinder, and intervention — Rule 23 is not a mechanism to add parties. In a class action, both the parties and the class members whom the parties purport to represent are already "in" the action. Because class members are part and parcel of a class action, the class cannot be broken apart for purposes of creating original jurisdiction and then mended back together under the illusion that the class members who destroyed original jurisdiction can be converted to "supplemental" members under § 1367.

Accordingly, when determining whether the court has original jurisdiction over the "civil action" — in this case a Rule 23(b)(3) class action — it must focus on the action commenced and not on part of it as convenient to achieve a desired result. When looking at original diversity jurisdiction in a Rule 23(b)(3) class action, the court must be satisfied that the claim of each party and class member, individually, satisfies the jurisdictional amount. *Zahn*, 414 U.S. at 301. Because that requirement is concededly not satisfied in this case, the first step of the § 1367 analysis is not satisfied and there is no federal case to which supplemental jurisdiction can attach.

### III

Even if we assume that the "take-it-apart and put-it-back-together" end-run around the original jurisdiction requirement in § 1367 is legitimate, the panel's conclusion must fail because the proposed "supple-

---

that the court have jurisdiction over a civil action is satisfied. Only after finding original jurisdiction over a civil action may a court exercise *supplemental* jurisdiction over other claims that are part of the "same case" (in a constitutional sense). The concurring opinion persists in overlooking the distinctions, made in the text of § 1367(a), between a civil action and a constitutional case. This same confusion also led the panel majority opinion to fail to recognize that a civil action may include an aggregation of distinct constitutional cases. *See*, *e.g.*, *Zahn*, 414 U.S. at 296 (observing that a 23(b)(3) class action is a "congeries of separate suits").

mental" claims are not part of the "same case," as required by *Gibbs* and codified in § 1367(a). To qualify for supplemental jurisdiction under § 1367(a), the supplemental claims must be so related to the original claim that the two "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But Rule 23(b)(3) authorizes class actions involving different cases or controversies that are constitutionally distinct, as long as they involve a common question of law or fact. Although absent class member's claims are bundled with representative parties' claims in order to facilitate adjudication, the claims formulating the bundle are not part of one case in a constitutional sense. To conclude that they are is simply inconsistent with all the jurisprudence of Rule 23(b)(3) class actions and of Article III of the Constitution.

Rule 23(b)(3), added in 1966, authorizes a representative party to represent absent class members if there are common questions of law or fact and those questions predominate. *See* Rule 23(a), (b)(3). The existence of common questions of law and fact, however, does not make bundled claims part of the "same case" in a constitutional sense. The parts of the bundle do not derive from a common nucleus of operative fact. In this case, for example, each claim in the Rule 23(b)(3) bundle has different facts with regard to the circumstances under which the claimants' husbands took Trovan, their medical history, the amounts taken, and the effects on the claimants. This bundle of cases, derived from different nuclei of operative fact is joined only for judicial efficiency, not because they are the "same case" as understood under Article III.

Indeed, the constitutionally distinct nature of the claims aggregated under Rule 23(b)(3) was the backbone of the Supreme Court's decision in *Zahn*. The Court accepted the characterization that a spurious class action before 1966 and a 23(b)(3) class action after the 1966 changes remained "a congeries of separate suits." *Zahn*, 414 U.S. at 296 (quoting *Steele v. Guaranty Trust Co. of N.Y.*, 164 F.2d 387, 388 (2d Cir. 1947)). The separate quality of the absent members' claims led to the conclusion that "each claimant must, as to his own claim, meet the jurisdictional requirements." *Id.*; *see also id.* at 301 (requir-

ing "[e]ach plaintiff in a Rule 23(b)(3) class action [to] satisfy the jurisdictional amount").[2]

As a codification of *Gibbs*, § 1367(a) clearly requires that the original and supplemental claims "form part of the same case or controversy under Article III." Section 1367(a) does not affect the requirement that the state and federal claims must derive from a common nucleus of operative fact. Accordingly, the statute preserves the justification for *Zahn* and cannot be understood to undo that case.

The holding in *Zahn*, of course, does not say that a class action authorized under Rule 23(b)(3) cannot be prosecuted legitimately as a group of cases under Article III of the Constitution. There is no constitutional requirement prohibiting two constitutional cases from being adjudicated simultaneously, and the simultaneous prosecution of similar claims for judicial efficiency is the justification for Rule 23(b)(3). But this simultaneous processing of similar claims does not mean that the various claims are one constitutional claim. They are not, as *Zahn* explains; they do not derive from the same nucleus of operative fact, *see Gibbs*, 383 U.S. at 725.

---

[2]The categorization, in *Zahn*, of 23(b)(3) class actions as an aggregation of separate suits would likely also require complete diversity among 23(b)(3) class members, as per *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806). While *Supreme Tribe of Ben Hur v. Cauble*, 255 U.S. 356 (1921) is often cited for the proposition that a class action may go forward in federal court when the complete diversity requirement is met as to class representatives only, that case likely would not apply to 23(b)(3) class actions. *Ben Hur* involved a class, consisting of members of a fraternal benefit organization, suing over the organization's practices. Because "prosecution of separate actions by . . . individual members of the class would create a risk of inconsistent or varying adjudications . . . which would establish incompatible standards of conduct for the party opposing the class," that case would have been certified under the current Rule 23(b)(1). As the facts were clearly distinguishable from the scenario envisioned by Rule 23(b)(3), *Ben Hur* likely is not applicable to Rule 23(b)(3). Accordingly, complete diversity among class members appears to be required for diversity jurisdiction over Rule 23(b)(3) class actions.

The panel opinion ignores this understanding of Rule 23 and consequently feels free to "find" original jurisdiction by reason of Rosmer's individual claim and then to "find" supplemental jurisdiction over all other class members' claims, even though they do not arise from the same nucleus of operative fact. By doing so, the panel majority opinion tramples an explicit requirement of § 1367(a).

IV

The panel majority also relies, for its conclusion, on the fact that, in § 1367(b), the class action rule is not included in the list of rules that will destroy diversity jurisdiction. Section 1367(b) indicates simply that supplemental jurisdiction is not conferred in diversity jurisdiction cases over "persons made parties under Rule 14, 19, 20, or 24." The panel majority reasons that, because Rule 23 is not so listed, Congress must have intended to permit supplemental jurisdiction in federal court over class action cases. But this again mischaracterizes § 1367(b) and perpetuates the misunderstanding of Rule 23.[3]

Contrary to the panel majority's assertion, the absence of Rule 23 from the list in § 1367(b) does not signal an overruling of *Zahn*. Rule 23 is absent because it is different than Rules 14, 19, 20, and 24. While the Rules in the list enable *adding* (whether structurally or analytically) new parties and their claims to an underlying claim for which diversity jurisdiction exists, Rule 23 does not provide for the *addition* of parties and their claims. All parties and claims are already included as the underlying case over which the court must have jurisdiction. Because both structurally and analytically the class action rule is not a device to add parties, the question never arises whether the *addition* of parties will destroy class action jurisdiction. In enacting § 1367(b), Congress was focusing on whether diversity jurisdic-

---

[3]The concurring opinion continues this misunderstanding of Rule 23 by suggesting that under my analysis, because parties can be joined under Rule 20 at the commencement of an action, Rule 20 should also not be on the list. *Ante* at 5. Unlike Rule 23, however, Rule 20 is like the other rules on the list in that its structure requires, as a condition precedent, an underlying civil action to which related claims are added. In contrast, a class action is, structurally, the "underlying" civil action, there are no related claims to add.

tion over an underlying claim would be *destroyed* by the addition of parties, and it concluded that such an addition *would indeed* destroy diversity jurisdiction. As Rule 23 cannot be broken into an underlying claim and added claims, it is analytically distinct from and does not belong among the rules listed in § 1367(b).

To read a repeal of *Zahn* by implication, based on the ground that Rule 23 was not included in the list of rules set forth in § 1367(b), represents a basic misunderstanding of the reason for the exceptions in § 1367(b) and the nature of Rule 23. With a more focused understanding of § 1367(b)'s exceptions, it becomes clear that Congress would never even have considered adding Rule 23 to the list. Accordingly, no valid conclusions can be drawn from the fact that Rule 23 was excluded from the list.

V

The panel opinion also refuses to consult the legislative history, concluding that the language of § 1367 so clearly supports its interpretation that no ambiguity exists to justify looking at what Congress said it intended.

While I assert in this opinion that a natural reading of § 1367 more clearly supports the conclusions that I have reached, both the panel majority opinion and I should recognize a sufficient level of ambiguity to permit a look at the legislative history. Obviously, the panel opinion cannot afford to take that look; the report attending the bill clearly states that Congress did not wish to overrule *Zahn. See* H.R. Rep. No. 101-734, at 28-29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6874-75, 6875 n. 17. The panel dismisses this observation simply by noting that it is "buried" in the legislative history. Yet, it is "buried" precisely at the point of the legislative history where Congress describes its intent. The fact that Congress describes its intent after several pages addressed to other subjects should not deny its consideration.

By dismissing this legislative history with the assertion that the statutory language of § 1367 unambiguously favors its interpretation, the panel majority conveniently concludes that Congress, *sub silentio*, overruled the seminal Supreme Court decision in *Zahn*. However,

Congress's stated intent further clarifies what is apparent from reading § 1367 in light of the nature of Rule 23 — such a drastic change in federal jurisdiction was not Congress' intent.

## VI

Over the years, diversity jurisdiction has served a useful role in providing an alternative forum for state-law claims, particularly to avoid potential local prejudices in particular types of cases. But inherently, any such facility comes into tension with the traditional division of judicial responsibility between the states and the federal government. And for that reason, and other more pragmatic ones, diversity jurisdiction has never been favored with aggressive expansion, either by Congress or the courts. Indeed, over the years, Congress has continually and without exception taken modest steps to limit the scope of diversity jurisdiction in this sensitive area of federalism.

Lacking a sensitivity for this overarching policy in the federal structure, the panel majority in this case not only amplifies manyfold the circumstances in which diversity jurisdiction is available, but also increases vastly the power of federal class actions, all at the expense of the states' long-standing privilege to decide state-law cases in their own courts.

This decision is a momentous mistake, and I respectfully dissent from the decision of our court not to rehear this case *en banc*.

DIANA GRIBBON MOTZ, dissenting from the denial of rehearing en banc:

I voted to rehear this case for the reasons set forth in my panel dissent. *See Rosmer v. Pfizer Inc.*, 263 F.3d 110, 122-129 (4th Cir. 2001) (Motz, J., dissenting). I will not repeat those reasons here. I write again only to address the assertion in the concurrence that some personal policy preference disfavoring diversity jurisdiction animates my views. *Ante* at 3. The panel majority made a similar contention. *See Rosmer*, 263 F.3d at 119, 121. This suggestion is as inaccurate now as it was then. In fact, as a member of the Federal Courts Study Com-

mittee, I voted *against* the Committee's recommendation to abolish or limit diversity jurisdiction. *See* Report of the Federal Courts Study Committee at 42-43 (April 2, 1990). My panel dissent and vote to rehear this case reflect no distaste for diversity jurisdiction. On the contrary, my views in this case simply evidence the recognition that as a judge I must follow congressionally enacted statutory language, regardless of personal preference.

Judge Luttig joins in this dissent.