Terry **MEHLENBACHER,**
et al., **Plaintiffs,**

v.

**AKZO NOBEL SALT, INC., Defendant.**

No. 94–CV–6343L.

United States District Court,
W.D. New York.

June 3, 2002.

---

4. *See,* Petitioner's Motion Requesting Release [# 19], pp. 4–5.

Richard J. Lippes, Allen, Lippes &
Shonn, Buffalo, NY, Frank H. Ferris, III,

Weiner, Lawrence & Ferris, East Rochester, NY, for plaintiffs.

Kenneth A. Payment, Harter, Secrest and Emery, LLP, Rochester, NY, Michael A. Cerussi, Jr., Ronald G. Crispi, Mark C. Dillon, Cerussi & Spring, White Plains, NY, for defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

This action is before the Court on remand from the Court of Appeals for the Second Circuit, for further proceedings on the issue of whether the requirements of the diversity jurisdiction statute, 28 U.S.C. § 1332(a), have been satisfied so as to bring this case within the subject matter jurisdiction of this Court. *See Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291 (2d Cir.2000). Having heard further argument and received further submissions from the parties concerning the issues relating to the existence of diversity jurisdiction, the Court makes the following findings and conclusions in that regard.

### BACKGROUND

The facts of this case have been set out at some length in prior decisions both of this Court, *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 71 F.Supp.2d 179 (W.D.N.Y. 1999), and of the Court of Appeals, familiarity with which is assumed. In short, the case arose out of the collapse of a salt mine owned by defendant Akzo Nobel Salt, Inc. ("Akzo") in March 1994. It is undisputed that the collapse caused some physical damage (*e.g.,* subsidence and sinkholes) to the land above the mine, at least in the immediate vicinity of the collapse.

Plaintiffs, who at all relevant times owned property in the area surrounding the mine, brought an action in New York state court, seeking to represent a class composed of all individuals and businesses who reside, work, or own property within a ten-mile radius of the mine and who suffered damages due to the collapse of the mine. Plaintiffs sought compensatory and punitive damages and injunctive relief, under theories of negligence, strict liability due to an abnormally dangerous activity, nuisance, and gross negligence. Plaintiffs did not specify the amount of damages sought in the state court action.

Akzo timely removed the case to this Court, premising subject matter jurisdiction on diversity of citizenship under 28 U.S.C. § 1332(a). Akzo (a New Jersey corporation) alleged that complete diversity existed between it and all the named plaintiffs, and that the jurisdictional amount [1] requirement was satisfied "given the multiplicity of plaintiffs and their claim for punitive damages." Notice of Removal at 2. Little else was alleged concerning damages in the Notice of Removal or in the original complaint. Plaintiffs did not contest the propriety of removal.

Following removal, plaintiffs filed an amended class action complaint, asserting the same causes of action as in their state complaint, but seeking to represent a broader class of all individuals and businesses who reside, work, or own property within a thirteen-mile radius of the mine and who suffered damages due to the mine collapse. The types of damage allegedly sustained by the class members included

1. At the time that the action was commenced, § 1332(a) required that "the matter in controversy exceed[ ] the sum or value of $50,000, exclusive of interest and costs...." The statute has since been amended to raise the amount to $75,000, but that amendment has no effect on the jurisdictional issue in this case. *See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,* 241 F.3d 154, 163–64 (2d Cir.2001); *Wolde Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 62 (2d Cir. 1999).

actual physical damage to property, diminution in property values, loss of use and enjoyment of property, personal injury, and other damages.

Akzo subsequently moved for partial summary judgment dismissing, *inter alia,* all the plaintiffs' claims for "stigma" damages, *i.e.,* damages for diminution in the value of plaintiffs' property (mostly due to public fear of the consequences of the mine collapse). On September 28, 1999, I granted Akzo's motion in part and denied it in part. Specifically, I dismissed plaintiffs' claims for damages for diminution in the value of their property, not associated with any actual physical damage to the property. 71 F.Supp.2d at 193. I declined, however, to grant summary judgment as to the plaintiffs who sought to recover both for physical damage and for diminution in the market value of their property. I also denied summary judgment as to certain other claims, including claims for ultrahazardous activity and nuisance. *Id.* at 191–92.

Plaintiffs then moved for an order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure entering a final judgment, so that they could immediately appeal the dismissal of the stigma claims. I granted that motion, based on my finding that allowing all of plaintiffs' claims to be tried together would further the interests of judicial economy, in the event that the Court of Appeals were to reinstate the stigma damage claims.

The plaintiffs whose claims for stigma damages were dismissed then appealed to the Second Circuit, arguing that New York law does allow them to recover such damages. The Court of Appeals did not address the merits, but *sua sponte* raised the issue of whether the case had been properly removed from state court to the federal district court in the first place, and in particular whether the requirements establishing diversity jurisdiction had been met.

Ultimately, the Second Circuit was unable to determine, on the record before it, whether jurisdiction existed under § 1332(a). The court did hold that if the individual plaintiffs each sought less than $50,000 in damages, plaintiffs' damage claims could not be aggregated to satisfy the statutory figure. 216 F.3d at 296 (citing *Snyder v. Harris,* 394 U.S. 332, 336, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). The court added, though, that the question became "more complicated" if at least one, but not all, of the named plaintiffs met the jurisdictional threshold of $50,000. 216 F.3d at 297. The issue in that situation would be whether the district court could, or should, exercise supplemental jurisdiction over the rest of the plaintiffs under 28 U.S.C. § 1367, which grants district courts that have original jurisdiction over an action the power to exercise supplemental jurisdiction over all claims that are part of the same case and controversy.[2]

---

**2.** Section 1367 provides, in pertinent part, as follows:

(a) [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that

involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to

Because this issue had not been briefed or argued by the parties, and because the relevant facts had not been established, the Second Circuit elected to remand the entire case to the district court to give Akzo (the party bearing the burden of showing that removal was proper) an opportunity to show whether any or all of the plaintiffs met the required $50,000 amount in controversy. The court also gave the following guidance to the district court, based on three possible sets of facts:

If, on remand, Akzo can show to a reasonable probability that each of the plaintiffs' claims—including those of absent class members—met or exceeded $50,000 when the case was brought, then diversity jurisdiction was proper. Conversely, if, on remand, Akzo can show that one or more, but not all, of the plaintiffs have claims that exceeded $50,000, then the district court should consider whether the exercise of supplemental jurisdiction over the remaining plaintiffs' claims would be proper, or whether, instead, the claims of these remaining plaintiffs should be dismissed. Finally, if Akzo is unable to show to a reasonable probability that the claims of any of the plaintiffs met the statutory requirement, then the district court must send the lawsuit back to state court.

*Id.* at 298–99 (footnotes omitted).

Following remand, defendant submitted a declaration (Docket # 44) of its attorney, Kenneth A. Payment, Esq., setting forth Akzo's reasons for believing that each of the individual plaintiffs' claims exceeded $50,000 when the case was brought. Plaintiffs have not opposed that showing and they too urge the Court to retain jurisdiction. Plaintiffs have submitted

copies of their responses to defendant's interrogatories, as well as an affidavit (Docket # 45) and an affirmation (Docket # 48) of their attorney, Theodore J. Burns, Esq., purportedly showing that each of their claims exceeds $50,000. Plaintiffs also contend that even if only some of the individual claims exceed the jurisdictional amount, the Court should exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

## DISCUSSION

■ First of all, it is axiomatic that the parties cannot agree between themselves and stipulate to jurisdiction in federal court. Regardless of the preferences of the litigants, the Court must be satisfied that the requirements for establishing federal jurisdiction have been met. In this case, the parties rely on diversity jurisdiction under § 1332(a). "Even where the parties are satisfied to present their disputes to the federal courts, the parties cannot confer subject matter jurisdiction where the Constitution and Congress have not. The absence of such jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." *Wynn v. AC Rochester,* 273 F.3d 153, 157 (2d Cir.2001) (per curiam) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)). *See also Drake v. Minn. Mining & Mfg. Co.,* 134 F.3d 878, 883 (7th Cir.1998) ("parties cannot stipulate to the subject-matter jurisdiction of the federal courts ..."); *In re Carbon Dioxide Industry Antitrust Litig.,* 229 F.3d 1321, 1325 (11th Cir.2000) ("To be sure, parties may not stipulate subject matter jurisdiction").

intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be in-

consistent with the jurisdictional requirements of section 1332.

■ "The Supreme Court has held that the party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdictional amount in controversy." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir.1994) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). In the case at bar, the Court of Appeals stated that "Akzo has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Mehlenbacher*, 216 F.3d at 296 (quoting *United Food & Commercial Workers Union Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir.1994)).[3] "Where . . . jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" *United Food*, 30 F.3d at 305 (quoting *McNutt*, 298 U.S. at 189, 56 S.Ct. 780).

■ "Satisfaction of the § 1332(a) diversity requirements, *i.e.* the amount in controversy and the citizenship of the parties, is determined as of the date that suit is filed." *Wolde–Meskel v. Vocational Instr. Project Cmty. Services, Inc.*, 166 F.3d 59, 62 (2d Cir.1999). Under this "time of filing" rule, "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *Id.* (quoting *St. Paul*, 303 U.S. at 289–90, 58 S.Ct. 586). *See Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir.1996) ("The amount in controversy is determined at the time the action is commenced") (quoting *Tongkook*, 14 F.3d at 784).

Although "[f]ederal diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset," *Wolde–Meskel*, 166 F.3d at 62,

---

**3.** In *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994), the Second Circuit stated that a "party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." (Quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir.1975)). The court also stated, however, that where the plaintiff claims a sum in excess of the jurisdictional amount, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

It is not clear whether the "reasonable probability" and "legal certainty" tests are the same, or, if they are different, the circumstances under which each should be applied. Both the Second Circuit and district courts in this circuit have recited both standards, without discussing whether there is any difference between the two. *See, e.g., id.; Chase Manhattan Bank, N.A. v. American Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d

Cir.1996) (reciting "reasonable probability" standard, but adding that "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal"); *Scherer v. Equitable Life Assur. Society of U.S.*, 190 F.Supp.2d 629, 631 (S.D.N.Y.2001); *State Farm Mut. Auto. Ins. Co. v. Mallela*, 175 F.Supp.2d 401, 410 (E.D.N.Y.2001); *Nowak v. Syva Co.*, 1989 WL 103674, *1 (W.D.N.Y.1989). *See also Target Market Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1141–42 (7th Cir.1998) (court applies "legal certainty" test if sufficiency of amount in controversy is uncontested, but if the defendant challenges the allegation, "plaintiff must support its assertion with competent proof, which means proof to a reasonable probability that jurisdiction exists").

As stated, the Court of Appeals in this case ruled that Akzo must prove "that it appears to a 'reasonable probability'" that the claim is for more than $50,000, so that is the standard that this Court will apply. In determining whether Akzo has carried its burden in that regard, however, I remain mindful of the "legal certainty" standard as well.

that does not mean that the court cannot take evidence to determine if jurisdiction *was* "properly laid at the outset." That is in fact what the Court of Appeals envisioned in this case; *see Mehlenbacher*, 216 F.3d at 298 ("It is only fair ... that the issue be remanded to the district court to allow the parties to submit evidence on the amount in controversy and to give defendants an opportunity to meet their burden as to this requirement of diversity jurisdiction as well") (quoting *United Food*, 30 F.3d at 306). *See also Williams v. Best Buy Co.*, 269 F.3d 1316, 1321 (11th Cir. 2001) ("where the notice of removal asserts the jurisdictional amount and the plaintiff does not challenge that assertion in the district court, we will remand the case to the district court for factual findings on the amount in controversy if the amount in controversy cannot be clearly determined by a review of the record") (citing *Mehlenbacher*); *Tongkook*, 14 F.3d at 785 (plaintiff's subjective belief, at the time it instituted suit, that amount in controversy exceeded jurisdictional amount, does not control where pretrial discovery uncovers facts showing, to a legal certainty, that plaintiff could not recover jurisdictional amount).

In order to determine whether Akzo has met its burden of showing that the requirements for diversity jurisdiction have been met, I must "look first to the plaintiffs' complaint and then to Akzo's petition for removal." *Id.* at 296. The Court is not limited to those documents, however, for the Second Circuit expressly noted that Akzo would be given the opportunity on remand "to introduce evidence" to show that the individual plaintiffs' claims each exceed $50,000. *Id.* at 299 n. 11. *See also United Food*, 30 F.3d at 305 ("Where the pleadings themselves are inconclusive as to the amount in controversy, ... federal courts may look outside those pleadings to other evidence in the record").

Although the Court of Appeals clearly left it to the district court to resolve this issue in the first instance, I note that the Court of Appeals also expressed some doubt about whether defendant would be able to establish that each plaintiff's claim is for more than $50,000. The court stated that "while the record as to the amount of loss sustained by each plaintiff is sparse, what evidence there is suggests that Akzo may not be able to meet that burden" of showing that each claim meets the amount-in-controversy requirement. *Id.* at 298 n. 11. The court noted, for instance, that

> [o]ne of the arguments put forward by plaintiffs' counsel for certifying this suit as a class action was that the individual losses sustained by the plaintiffs were likely to be less than $50,000. At oral argument before the district court, plaintiffs' counsel maintained that "for most of these people the cost of trying their cases would be more than their damages". It would not be economically feasible for them to go forward on a case by case basis, because they might claim ten or fifteen or twenty thousand dollars in subsidence damage per person, or maybe even a little more, maybe twenty-five or thirty thousand dollars. Tr. of Hearing on Class Certification, Aug. 21, 1998, at 8.

*Id.* The court nevertheless remanded in order to give Akzo an opportunity to present evidence on this issue, stating that "it is not impossible" that Akzo might carry its burden in this regard. *Id.*

Defendant itself has also implicitly indicated that the individual claims in this case might not each satisfy the $50,000 minimum. At page two of its notice of removal, Akzo asserted that the amount in controversy was sufficient, "given the *multiplicity* of plaintiffs and their claim for

punitive damages." (Emphasis added.) As the Second Circuit explained, Akzo apparently assumed-erroneously—that the damages sought by plaintiffs could be aggregated to meet the statutory figure. Akzo's statement at least suggests that without such an aggregation, the individual claims might fall below the minimum.

Having reviewed the complaint, defendant's removal petition, and the additional evidence submitted by the parties following remand from the Court of Appeals, I find that only some of the plaintiffs' claims exceed $50,000. I also conclude that under *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), this Court cannot exercise supplemental jurisdiction over the claims of the plaintiffs that do not meet the statutory minimum. Finally, I conclude that the proper course of action is for the court to remand the entire action to state court.

First, although most of the plaintiffs allege some physical damage to their property as a result of the mine collapse, not all of them do. Plaintiff Kirk Richenberg, for example, states in his answers to defendant's interrogatories that he owns two pieces of property in the area, but that neither has suffered any damage, "structural or otherwise ...." Affidavit of Theodore J. Burns, Esq. (Docket # 45), Ex. 23, at 3, 4. He also states that he "has suffered no physical injuries as a result of the incidents to date." *Id.* at 8. It appears that virtually the entire basis for his claim for damages is his allegation that the value of his property was diminished "due to the

stigma of potential future damage." *Id.* at 3–5.[4]

■ In the case of plaintiff Richenberg, then, I do not believe that his claim, regardless of the amount of damages alleged, can be said to exceed $50,000 for purposes of determining whether there is a basis for diversity jurisdiction.[5] In my prior decision on Akzo's motion for partial summary judgment, I ruled that "[t]o the extent that plaintiffs seek only stigma damages, ... they cannot recover." 71 F.Supp.2d at 190. Because that decision concerned only a question of law—the recoverability of "stigma" damages under New York law— and did not involve the resolution of any disputed issues of fact, I believe that it is proper to take the unavailability of such damages into account in determining whether the amount-in-controversy requirement has been met. There was no intervening event between the filing of the complaint and the issuance of my Decision and Order that rendered unavailable damages that previously had been available. Such damages never were available under New York law; my prior Decision and Order simply explained why.

In *St. Paul Mercury*, 303 U.S. at 288–89, 58 S.Ct. 586, the Supreme Court stated that

if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff *never was entitled to recover that amount*, and that his claim was

---

4. Plaintiff Nancy Glazier, the wife of Kirk Richenberg, claims the same damages. *See* Burns Aff., Ex. 24.

5. Richenberg alleges that he owns two pieces of property in the area of the mine collapse. He estimates that the value of one of them at the time of the collapse was $64,000, and that he sold it in October 1994 for $52,000. The

value of the other just prior to the collapse is alleged to be $2000. Plaintiff alleges that the latter property is now virtually worthless. Burn Aff., Ex. 23, at 3–5. Thus, even aside from the recoverability of stigma damages, it does not appear that Richenberg's claim meets or exceeds the jurisdictional amount.

therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

(Footnote omitted) (quoted in *Tongkook*, 14 F.3d at 784). Thus, based on my prior ruling on defendant's motion for partial summary judgment, it is clear that plaintiffs never were entitled to recover stigma damages, so the claims for such damages should not be included in determining whether the amount-in-controversy requirement has been met. *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir.1997) ("Although we are mindful that once jurisdiction has properly attached, it cannot be ousted by subsequent events, appellant's intentional infliction of emotional distress claim was defective from the start. In other words, it was clear 'from the face of the pleadings, ... to a legal certainty, that the plaintiff cannot recover the amount claimed' ") (quoting *St. Paul Mercury*, 303 U.S. at 289, 58 S.Ct. 586) (other quotation omitted); *Wiggins v. North American Equitable Life*, 644 F.2d 1014, 1017–18 (4th Cir.1981) (where part of the amount in controversy was a prayer for punitive damages that was clearly precluded under applicable state law, court concluded "to a legal certainty" that it lacked subject matter jurisdiction because of the insufficiency of the amount in controversy). *See also FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 643–44 (D.Md.1998) ("While the Court agrees that a plaintiff should be given the benefit of the doubt with respect to a questionable legal theory at this juncture, the Court need not close its eyes to legal theories that are plainly without merit" in determining whether amount in controversy is sufficiently great to meet jurisdictional requirements).

■ I also am aware that plaintiffs have requested an award of punitive damages, in an unspecified amount, and that "[w]hen punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir.1991). Even taking that request into account, however, I do not believe that every plaintiff here can be said to have met the amount-in-controversy requirement. For one thing, the Second Circuit has held that "punitive damages asserted on behalf of a class may not be aggregated for jurisdictional purposes where ... the underlying cause of action asserted on behalf of the class is not based upon a title or right in which the plaintiffs share, and as to which they claim, a common interest." *Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1431 (2d Cir.1997); *see, e.g., Davies v. Belden & Blake Corp.*, No. 00–CV–0245, 2001 WL 210471, *5 (W.D.N.Y. Feb. 20, 2001) (dividing total punitive damages requested by number of plaintiffs to determine if individual plaintiffs in class action met jurisdictional amount, since aggregation was not appropriate); *see also Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1292 (10th Cir. 2001) ("all of the circuits considering the issue now hold that punitive damages cannot be aggregated and attributed in total to each member of a putative class for purposes of satisfying the amount-in-controversy requirement of diversity jurisdiction").

■ The instant case also does not fall within the "common fund" exception set forth by the court of appeals in *Gilman*, because each plaintiff's claim is based on that particular plaintiff's ownership or use of a discrete piece of property, and not upon a "single title or right" in which the plaintiffs claim a common interest. *Gilman*, 104 F.3d at 1430. The fact that all the plaintiffs' claims arise out of the same conduct on the part of defendant is imma-

terial, since "[a]n action arising out of a common course of conduct does not give rise to the common fund exception." *Fein v. Chrysler Corp.*, No. CV–98–4113, 1998 U.S.Dist. LEXIS 15644, *7 (E.D.N.Y. Sept. 28, 1998) (noting that "[t]he 'paradigm cases [in which the common fund exception applies] ... are those which involve a single indivisible *res*, such as an estate, a piece of property ... or an insurance policy' ") (quoting *Bishop v. General Motors Corp.*, 925 F.Supp. 294, 298 (D.N.J. 1996)); *see also Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 218 (3d Cir.1999) (plaintiffs' claims could not be aggregated to satisfy jurisdictional amount, because "[a]lthough their claims stem[med] from the same cause ... they [we]re separate and distinct").

■ It does appear that there is a reasonable probability that some of the named plaintiffs' claims do exceed $50,000. This is based on plaintiffs' answers to interrogatories and the summary of those answers contained in the affidavit of plaintiffs' attorney, Theodore J. Bums, Esq. (Dkt.# 45). But, it is also quite clear that most of them do not, and there is virtually no proof that absent class members have individually sustained losses in excess of $50,000. Therefore, I believe that it can be said, to a legal certainty, that not every plaintiff in this action has a claim for over $50,000, even when punitive damage claims are included. Certainly the claims of plaintiffs Richenberg and Glazier do not meet the statutory minimum. Even setting aside the unavailability of stigma damages, a jury could not reasonably award over $50,000 in punitive damages to those plaintiffs, whose property is not even alleged to have suffered any physical damage. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1272 (11th Cir.2000) ("Although we recognize that a court owes some deference to a diversity plaintiff's

amount in controversy allegations, ... that deference does not eviscerate the court's obligation to scrupulously enforce its jurisdictional limitations," and "a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury") (quoting *Diefenthal v. Civil Aeronautics Bd.*, 681 F.2d 1039, 1052 (5th Cir.1982)).

■ Likewise, although plaintiff John Hendrickson has alleged actual physical damage to his property, his answers to defendant's interrogatories indicate that he has suffered no physical injury himself, and that the amount of his property damages is well below $10,000. *See* Burns Aff.Exs. 15, 16. Again, I do not believe that a jury could reasonably award Hendrickson damages, even including punitive damages, in excess of $50,000, given the relatively small extent of his actual damages and the fact that the conduct alleged here does not appear to have been "intentional, malicious, outrageous, or otherwise aggravated beyond mere negligence," *Graham v. Columbia–Presbyterian Med. Ctr.*, 185 A.D.2d 753, 754, 588 N.Y.S.2d 2 (1st Dep't 1992), or "so flagrant as to transcend mere carelessness," *Frenya v. Champlain Valley Physicians' Hosp. Med. Ctr.*, 133 A.D.2d 1000, 1000–1001, 521 N.Y.S.2d 150 (3d Dep't 1987), as to support an award of punitive damages. "Although punitive damages are included in the amount of controversy, the existence of the required amount must be supported by competent proof." *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir.1994) (internal citation and quote omitted). "Indeed, when determining the amount in controversy, 'a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages.' " *Id.* (quoting *Zahn v. International Paper Co.*, 469 F.2d 1033, 1034 n. 1 (2d Cir.1972),

*aff'd*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)).

Furthermore, the Second Circuit directed this Court to consider whether "each of the plaintiffs' claims—*including those of absent class members*—met or exceeded $50,000 when the case was brought...." 216 F.3d at 298 (emphasis added). That class, as defined by plaintiffs, includes all individuals and businesses who reside, work, or own property within a thirteen-mile radius of the mine and who suffered damages due to the mine collapse. That class, in turn, is composed of four subclasses:

> (1) residential homeowners whose property values were adversely affected, who incurred physical damage to their property, or who lost the use and enjoyment of their property; (2) commercial property owners who suffered economic losses, including diminution in the value of their property or lost profits; (3) persons who live or work within the thirteen-mile radius who suffered economic losses, including "the expense of securing alternative water supplies," the cost of remediating damage to their property, and lost wages; and (4) persons who suffered personal injuries or emotional distress due to the mine collapse or resulting water contamination.

*Mehlenbacher*, 216 F.3d at 294. Given the broad scope of this proposed class, and the various types of damages sought (at least one of which—diminution in property value attributable to the "stigma" associated with the mine collapse—I have ruled is unavailable), I find it very unlikely that all, or even most, of the unnamed class members (who are estimated by plaintiffs to number "at least in the thousands," *see* Amended Class Action Complaint ¶ 5) have individual claims exceeding $50,000. Certainly the parties' showing in this regard falls far short of the "reasonable probability" standard which the Second Circuit directed the Court to employ in this case. *See Fein*, 1998 U.S.Dist. LEXIS 15644, *14–15 (court considered fact that plaintiffs alleged that class numbered "in the thousands" in concluding that amount-in-controversy requirement had not been met, since there was no evidence that total punitive damage award would be so large that each class member's pro rata share would meet jurisdictional amount).

 As stated, then, it is clear, to a legal certainty, that at least some, and probably most, of the plaintiffs' claims do not exceed $50,000. The next question before the Court, then, is "whether the exercise of supplemental jurisdiction [under 28 U.S.C. § 1367] over the remaining plaintiffs' claims would be proper, or whether, instead, the claims of these remaining plaintiffs should be dismissed." *Mehlenbacher*, 216 F.3d at 299.

In part, the resolution of that issue turns on whether the enactment of § 1367 effectively overruled the Supreme Court's decision in *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), in which the Court held that supplemental jurisdiction could not be exercised over the claims of class members that do not satisfy the amount in controversy. *See id.* at 300, 94 S.Ct. 505.[6] As noted by the Court of Appeals in the instant case, the Second Circuit "has not spoken as to the continuing viability of *Zahn* after the enactment of § 1367, and other courts of appeals have reached different conclusions on the issue." 216 F.3d at 297. The Fourth, Fifth, Seventh and Ninth Circuits have held that § 1367 legis-

---

**6.** I also note that the Second Circuit's ruling in *Gilman* that punitive damages cannot ordinarily be aggregated rested to some extent on the court's conclusion that it was constrained by the Supreme Court's holding in *Zahn*. *See Gilman*, 104 F.3d at 1430–31.

latively overruled *Zahn,* thereby permitting district courts to exercise supplemental jurisdiction over class members whose claims do not meet the jurisdictional amount, *see Rosmer v. Pfizer Inc.,* 263 F.3d 110, 114–22 (4th Cir.2001) (2–1 decision), *rehearing en banc denied,* 272 F.3d 243 (4th Cir.2001) (4–4 decision), *petition for cert. filed,* 70 U.S.L.W. 3615, 2002 WL 458891, —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d —— (No. 01–1390) (U.S.2002); *In re Abbott Labs.,* 51 F.3d 524, 527–29 (5th Cir.1995), *aff'd by an equally divided court,* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000); *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 930–33 (7th Cir.1996) (Rule 20 joinder case); *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 607 (7th Cir.1997) (following *Stromberg* in Rule 23 class action context); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 934–40 (9th Cir.2001), while the Third, Eighth and Tenth Circuits have held that *Zahn* remains good law. *See Meritcare,* 166 F.3d at 222; *Leonhardt v. Western Sugar Co.,* 160 F.3d 631, 640–41 (10th Cir.1998); *Trimble v. Asarco, Inc.,* 232 F.3d 946, 962 (8th Cir.2000).

Although the Second Circuit has not yet addressed this issue, a number of district courts within this circuit have, and to date "every district court in this circuit that has addressed the issue has held that *Zahn* is still good law." *Freeman v. Great Lakes Energy Partners, L.L.C.,* 144 F.Supp.2d 201, 210 (W.D.N.Y.2001). *See In re Ciprofloxacin Hydrochloride Antitrust Litigation,* 166 F.Supp.2d 740, 755 (E.D.N.Y. 2001) ("a finding that *Zahn* is not overruled by Section 1367 is consistent with the vast weight of authority in this Circuit"); *Davies,* 2001 WL 210471, *2; *Greenberg v. Trace National Holdings, Inc.,* 1999 WL 587935, at *3 (S.D.N.Y. Aug.4, 1999); *Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.,* 62 F.Supp.2d 1116, 1127–28 (S.D.N.Y.1999); *Colon v. Rent–A-*

*Center, Inc.,* 13 F.Supp.2d 553, 562 (S.D.N.Y.1998); *Fein,* 1998 U.S.Dist. LEXIS 15644, *25; *McGowan v. Cadbury Schweppes, PLC,* 941 F.Supp. 344, 348 (S.D.N.Y.1996); *Bernard v. Gerber Food Products Co.,* 938 F.Supp. 218, 224 (S.D.N.Y.1996); *Trapanotto v. Aetna Life Ins. Co.,* No. 95 Civ. 10704, 1996 WL 417519, *8–11 (S.D.N.Y. July 25, 1996); *Benfield v. Mocatta Metals Corp.,* No. 91 Civ. 8255, 1993 WL 148978, at *4 (S.D.N.Y. May 5, 1993).

Upon consideration of the issue, I agree with the conclusion reached by the other district courts in this circuit, and hold that § 1367 does not overrule *Zahn.* Therefore, the court cannot exercise supplemental jurisdiction over class members whose individual claims do not exceed $50,000.

A review of the court of appeals cases addressing this issue shows that a major source of the split among the circuits lies in the extent to which the courts found it necessary, or appropriate, to consider the legislative history of § 1367. In general, the courts that held that § 1367 overruled *Zahn* did so based on what they believed to be the unambiguous language of the statute. In particular, those courts noted that § 1367(b) lists certain exceptions to subsection (a)'s grant of supplemental jurisdiction, and that "class actions are not among the exceptions." *Abbott Labs.,* 51 F.3d at 527; *Stromberg,* 77 F.3d at 930 (stating that *Abbott Labs.* has "strong support from the statutory text"); *Rosmer,* 263 F.3d at 115 ("In effect, Rosmer would have us rewrite the statute to insert Rule 23 into § 1367(b)'s list of exceptions. This we cannot do"). Those courts' conclusion that the statute is clear on its face rendered reference to the legislative history unnecessary if not improper. *See Abbott Labs.,* 51 F.3d at 528 ("We cannot search legislative history for congressional intent unless we find the statute unclear or am-

biguous. Here, it is neither"); *Stromberg*, 77 F.3d at 931 ("When text and legislative history disagree, the text controls"); *Gibson*, 261 F.3d at 939 (stating that legislative history indicating that § 1367 was not intended to overrule *Zahn* is not "enough to overcome the plain meaning of the text"); *Rosmer*, 263 F.3d at 117 ("when a statute is plain on its face, a court's inquiry is at an end").

Conversely, those courts of appeals that have held that *Zahn* remains good law in the wake of § 1367 have relied, at least in part, on the legislative history of that statute. *See Leonhardt*, 160 F.3d at 640 (stating that "[t]he legislative history of § 1367 supports our interpretation of the statute"); *Meritcare*, 166 F.3d at 222 (finding "that there is sufficient ambiguity in the statute to make resort to the legislative history appropriate"); *Trimble*, 232 F.3d at 962 (adopting reasoning of Tenth Circuit in *Leonhardt*). That is also true of many of the district court decisions from this circuit. *See, e.g., Ciprofloxacin*, 166 F.Supp.2d at 754–55; *Freeman*, 144 F.Supp.2d at 210; *Allendale*, 62 F.Supp.2d at 1127.

The legislative history contains definite indications that in enacting § 1367, Congress had no intention of overruling *Zahn*. Rather, it appears that Congress was chiefly concerned with overruling the Supreme Court's decision in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), which disapproved the use of pendent-party jurisdiction to support a state law claim against a party who was not subject to a federal claim. *See* H.R.Rep. No. 101–734, at 29, *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 ("section [1367] is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to Finley"; citing *Zahn* as among decisions that

Congress intended to preserve). That history has been exhaustively examined by other courts, and will not be reiterated here. *See, e.g., Leonhardt*, 160 F.3d at 640–41; *Meritcare*, 166 F.3d at 219–22; *Ciprofloxacin*, 166 F.Supp.2d at 754–55; *Allendale*, 62 F.Supp.2d at 1127–28; *Russ v. State Farm Mutual Auto. Ins. Co.*, 961 F.Supp. 808, 814–22 (E.D.Pa.1997). It suffices to say, however, that one point on which most courts do seem to agree is that the legislative history does suggest that Congress did *not* intend to disturb the holding of *Zahn*. Even some of the courts that have held that § 1367 overruled *Zahn* have recognized that the legislative history indicates that Congress may not have intended that result. *See Gibson*, 261 F.3d at 939 ("We agree with the Third, Eighth and Tenth Circuits to this degree: the legislative history provides a substantial basis to believe that the omission of claims by Rule 23 plaintiffs from subsection (b) of § 1367, and the resulting overruling of *Zahn*, was an oversight"); *Abbott Labs.*, 51 F.3d at 528 ("Omitting the class action from the exception [in subsection (b)] may have been a clerical error").

After considering the matter, I agree with those courts that have found the text of § 1367 to be sufficiently ambiguous with respect to whether it overrules *Zahn* to make an examination of the legislative history appropriate. *See Meritcare*, 166 F.3d at 222 ("we conclude that there is sufficient ambiguity in the statute to make resort to legislative history appropriate"); *Freeman*, 144 F.Supp.2d at 210 ("this court ... finds that the language of section 1367(a) and (b) is sufficiently ambiguous to make inquiry into its legislative history appropriate"). I likewise find that the legislative history demonstrates that § 1367 was not intended, and should not be construed, to overrule *Zahn*.

Interestingly, it is not only the courts that read § 1367 as overruling *Zahn* that have found the statute to be unambiguous. Two of the courts of appeals that have held that *Zahn* remains good law also found. § 1367 to be unambiguous; they simply held that it unambiguously preserved. the rule of *Zahn* intact. *See Leonhardt*, 160 F.3d at 640 ("In our view, a literal and textually faithful reading of § 1367(a) leads to the opposite conclusion from that of the Fifth and Seventh Circuits"); *Trimble*, 232 F.3d at 962 (adopting *Leonhardt's* reasoning); *see also Rosmer*, 263 F.3d at 122 (opining that " § 1367 unambiguously preserves the rule of *Zahn* ") (Motz, C.J., dissenting). Another, the Third Circuit in *Meritcare*, held that the statute is ambiguous enough to make resort to the legislative history appropriate, but that "[e]ven were we to conclude that Section 1367 is unambiguous, as *Abbott Laboratories* read it, we would nevertheless turn to the legislative history because this is one of those 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' " (quoting *United States v. Sherman*, 150 F.3d 306, 313 (3d Cir.1998)).

Thus, the courts that have addressed this issue have variously concluded that: § 1367 is not ambiguous, and that it overrules *Zahn* ; § 1367 is not ambiguous, and that it does not overrule *Zahn* ; and § 1367 is ambiguous, and that it does not overrule *Zahn*. While I agree with the Fourth Circuit's statement in *Rosmer* that a court "cannot allow the fact that other [courts] have called a statute ambiguous to negate [the court's] duty to interpret the text of the enactment," and to arrive at an independent conclusion about whether the statute is ambiguous, 263 F.3d at 118, certainly one might be led to question just how unambiguous a statute can be when a substantial number of courts have reached such widely varying conclusions when attempting to divine its meaning.

Even aside from the fact that courts have reached conflicting results, however, I do believe that § 1367 is ambiguous in this regard. On the one hand, it is true that class actions are conspicuously absent from the exceptions set forth in subsection (b). At the same time, however, § 1367(b)'s prohibition of the exercise of supplemental jurisdiction in certain situations where the exercise of such jurisdiction "would be inconsistent with the jurisdictional requirements of § 1332" "evidences a concern for preserving the historical and well-established rules of diversity." *Leonhardt*, 160 F.3d at 640.

In addition, subsection (a)'s reference to "civil action[s] of which the district courts have original jurisdiction" may also reasonably be interpreted in conflicting ways. In *Leonhardt*, the Tenth Circuit interpreted § 1367(a) as incorporating the existing rules of original jurisdiction, and extending a grant of supplemental jurisdiction only where the district court first possesses original jurisdiction under § 1332, *i.e.*, where each member of the class in a diversity-based class action satisfies the jurisdictional amount. *See* 160 F.3d at 640; *accord Rosmer*, 263 F.3d at 124 (Motz, C.J., dissenting); *see also Rosmer*, 272 F.3d at 249 (describing majority panel opinion in *Rosmer* as using "analytical magic" to avoid determining whether original-jurisdiction requirement has been satisfied) (Niemeyer, C.J., dissenting from denial of rehearing *en banc* ). The Fourth and Ninth Circuits disagreed with that interpretation; the majority in *Rosmer* opined that *Leonhardt's* "reading of the statute would render the phrase 'over all other claims that are so related to claims in the action within such original jurisdiction' virtually superfluous," *Rosmer*, 263 F.3d at 116 (quoting 28 U.S.C. § 1367(a)), while the Ninth Circuit stated that *Leon-*

*hardt's* construction of the statute depended upon an unsupportable distinction between diversity and federal question cases. *Gibson,* 261 F.3d at 935.

Regardless of which of these opposing interpretations one agrees with, neither of them is patently unreasonable; persuasive arguments can be made on both sides. What is clear, then, is that the meaning of the statute is simply not so apparent as to foreclose consultation of the legislative history for guidance on Congress's intent.

Moreover, as the Third Circuit noted in *Meritcare,* the Supreme Court has recognized that there are "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." 166 F.3d at 222 (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). "In such cases, the intention of the drafters, rather than the strict language, controls." *Ron Pair Enterprises,* 489 U.S. at 242, 109 S.Ct. 1026 (1989). *Accord Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982); *see, e.g., Salute v. Stratford Greens Garden Apts.,* 136 F.3d 293, 297 (2d Cir.1998) (construing provision of United States Housing Act, 42 U.S.C. § 1437f(t)); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313–14 (construing provision in Title VII defining "employer," 42 U.S.C. § 2000e(b)). I agree with the Third Circuit that even if a literal interpretation of § 1367 would mean that it overrules the Supreme Court's

holding in *Zahn* (and since I find the statute ambiguous in that regard, I am not convinced that it would), that result is so clearly contrary to Congress's intent that it would thwart the intended purpose of the statute.

I conclude, therefore, that § 1367 does not overrule *Zahn,* and that the fact that some plaintiffs' claims exceeded $50,000 when this case was brought does not permit the Court to exercise supplemental jurisdiction over the remaining plaintiffs' claims. Accordingly, those claims must be remanded to state court.[7]

As have several other district courts before me, I also do not believe that *Zahn* requires the court to remand *only* those claims that do not meet the jurisdictional-amount threshold. Such a course of action seems particularly unwise in the class-action context, since it would result in the claims of some class members being tried in federal court, and the others in state court, with the potential for conflicting rulings of law, arguments over which class members belong in which court, and other procedural vexations desired by neither plaintiffs nor defendant. *See Freeman,* 144 F.Supp.2d at 211 ("the court does not read *Zahn* as mandating an involuntary division of an otherwise proper class action suit through a remand of only those plaintiffs' claims which do not exceed" the jurisdictional amount) (quoting *Craig v. Congress Sportswear, Inc.,* 645 F.Supp. 162, 166 (D.Me.1986)); *accord Crosby v. Aid Ass'n for Lutherans,* 199 F.R.D. 636, 640

---

**7.** Although the Court of Appeals in this case stated that "if, on remand, Akzo can show that one or more, but not all, of the plaintiffs have claims that exceeded $50,000, then the district court should consider whether the exercise of supplemental jurisdiction over the remaining plaintiffs' claims would be proper, or whether, instead, the claims of these remaining plaintiffs should be *dismissed,*" *Mehlenbacher,* 216 F.3d at 298–99 (emphasis added), presumably the court meant that if this

Court found the exercise of supplemental jurisdiction to be improper, the remaining plaintiffs' claims should be "dismissed" only in the sense that they are being dismissed from this court, and remanded to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case that has been removed from state court], the case shall be remanded").

(D.Minn.2001); *Averdick v. Republic Financial Services, Inc.,* 803 F.Supp. 37, 45 (E.D.Ky.1992); *Kennedy ·v. Commercial Carriers, Inc.,* 739 F.Supp. 406, 413 (N.D.Ill.1990) (noting that if only some plaintiffs' claims were remanded, "[t]here would be duplication of effort and a consequent waste of resources, potential inconsistent results between the federal and state courts, and disputes over which court has jurisdiction of different class members, depending on whether the particular class member's claim exceeded the jurisdictional amount"). In order to avoid the "undesirable outcome of having parallel complex litigation in federal and state courts," *Freeman,* 144 F.Supp.2d at 211, this action will be remanded to state court in its entirety.

## CONCLUSION

Having considered whether plaintiffs in this action met the required amount in controversy under 28 U.S.C. § 1332(a) when this case was filed, the Court concludes that it has not been shown to a reasonable probability that all the plaintiffs have met the jurisdictional amount, and that the Court therefore lacks subject matter over some of the plaintiffs' claims. I also determine that the Court may not retain jurisdiction over the non-qualifying plaintiffs under provisions of § 1367.

I also find that in the interests of judicial economy and to avoid parallel litigation of plaintiffs' claims in state and federal court, the entire action should be remanded to state court. Accordingly, this case is remanded in its entirety to the New York State Supreme Court in Livingston County, pursuant to 28 U.S.C. § 1447(c).

IT IS SO ORDERED.